Jim Eric **CHANDLER,**
**Plaintiff–Appellant,**

v.

Captain William **BAIRD, et al.,**
**Defendants–Appellees.**

No. 90–5322.

United States Court of Appeals,
Eleventh Circuit.

March 15, 1991.

---

1058

James K. Green, Green, Eisenberg & Cohen, West Palm Beach, Fla., Charlann Jackson, Florida Rural Legal Services, Bartow, Fla., Randall C. Berg, Jr., Florida Justice Institution, Miami, Fla., for plaintiff-appellant.

Keith C. Tischler, Parker, Skelding, Labasky & Corry, Tallahassee, Fla., for defendants-appellees.

Before CLARK and BIRCH, Circuit Judges, and COFFIN *, Senior Circuit Judge.

---

* Honorable Frank M. Coffin, Senior U.S. Circuit Judge, for the First Circuit, sitting by designa-

COFFIN, Senior Circuit Judge:

This appeal presents several challenges arising out of the sixteen-day restricted confinement of a prisoner, Jim Eric Chandler. In his *pro se* complaint Chandler asserted the following illegal actions: a violation of procedural due process in his being confined without advance notice of charges against him and opportunity to rebut them; violation of unspecified rules and regulations; violation of the Eighth Amendment in the conditions of his confinement; and deprivation of his constitutional right to legal materials and access to courts. The district court granted summary judgment on all counts for defendants, officials of a Florida county jail, the Indian River Detention Facility. We affirm its action in all respects save plaintiff's challenge to the conditions of his confinement. As to this, we cannot say, on this record and at this stage of the proceedings, that defendants should prevail as a matter of law. We therefore remand for further proceedings.

For a combination of reasons, plaintiff was lodged in the Indian River county jail for some two-and-one-half years awaiting resentencing for a capital offense. Until the time of the events relevant to this appeal, he resided in cell block "B" with eleven other inmates. On August 17, 1986, however, an inmate informed an officer that eight other inmates, with plaintiff as their ringleader, were planning an escape that might involve many others. The plan was to assault an officer, obtain his keys, and then remove cell bars by twisting a sheet, using a book as a lever. Later that day an officer was indeed attacked by an inmate wielding a sack stuffed with dominoes.

Although the escape attempt aborted, Captain Baird, administrator of the jail, feared further attempts. In light of the identification of plaintiff as ringleader, and knowing that Chandler had recently drawn

down his commissary account from an average level of $50 to ten cents and sent his years' accumulation of legal materials to his father, Baird ordered plaintiff committed to administrative confinement pending a criminal investigation. Plaintiff was taken on August 20 to a strip cell in "F" Block. On August 21, he was moved to "S" Block and placed in a solitary confinement cell, where he remained until September 5, 1986, when he was transferred to another facility closer to his resentencing hearing.

The complaint set forth six causes of action. On appeal, plaintiff asserts that the district court erred in resolving issues of fact in granting summary judgment on four of these causes. Specifically, he argues that summary judgment was inappropriate on his claims that he was denied procedural due process in the imposition of his confinement (count three), that he was deprived of meaningful access to the courts (counts four and five), and that he was subjected to unconstitutional conditions in his confinement (count one).[1] As to each issue, defendants both defend on the merits and invoke qualified immunity.

### *Procedural Due Process*

Plaintiff alleged that he was deprived of procedural due process when he was not notified of the charges that were the basis for his placement in administrative confinement, and was given no opportunity to defend and no hearing, contrary to the rules and regulations of the Florida Department of Corrections. The district court held that *Parker v. Cook*, 642 F.2d 865, 875 (5th Cir.1981), established the principle that placing an inmate in administrative confinement in a Florida prison implicated a liberty interest triggering the requirement of procedural due process. The court then ruled, however, that defendant jail officials enjoyed qualified immunity because the evi-

---

tion.

**1.** We observe that Chandler has not disputed on appeal the district court's grant of summary judgment on count two, alleging violation of unspecified rules and regulations. In addition, Chandler has made no argument concerning the

allegations contained in count six, which alleged both Eighth Amendment and due process violations arising out of the specific conduct of defendant Altic. We therefore do not address these claims on appeal.

dence indicated that neither official "understood" that he was violating any of plaintiff's constitutional rights.

Leaving aside the arguable reading that the court was making findings of fact as to defendants' understanding—which would be inconsistent with a ruling on a motion for summary judgment—we observe that the court somehow found itself basing qualified immunity upon the subjective state of mind of defendants. This, of course, is contrary to the teaching of *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), which sets forth an objective test under which "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See also Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988).

█ We, however, choose not to decide the issue on the basis of defendants' entitlement to qualified immunity because we find that Chandler was not deprived of a liberty interest. The Supreme Court has made it clear that the Due Process Clause does not directly protect an inmate from changes in the conditions of his confinement, *see Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976), as long as the condition to which the prisoner is subjected is not otherwise violative of the Constitution or outside the sentence imposed upon him, *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). Nor does the Due Process Clause itself create "an interest in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters." *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). *See also Sheley v. Dugger,* 833 F.2d 1420, 1424 (11th Cir.1987). A state may, however, create a liberty interest which is protected by the Due Process Clause, *see Mea-*

*chum,* 427 U.S. at 226, 96 S.Ct. at 2539, and does so "by placing substantive limitations on official discretion," *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983).

The Court has articulated two components of such substantive limitations: "specific substantive predicates" to guide state decisionmakers and "repeated use of mandatory language." *Hewitt,* 459 U.S. at 472, 103 S.Ct. at 871. *See also Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 1909-10, 104 L.Ed.2d 506 (1989). At issue in this case is solely whether the language invoked by Chandler is sufficiently mandatory to create a liberty interest.

█ We are dealing with that section of the Florida Administrative Code governing county and municipal detention facilities, Rule 33-8.013. After prescribing *disciplinary* procedures to be followed when an infraction of rules occurs, including a report, an investigation, a 24-hour advance notice of charges to inmates accused of infractions, and a hearing with the possibility of witnesses and assistance for the inmate, subparagraph (13) states in relevant part:

> Inmates may be placed in administrative confinement for the purpose of ensuring immediate control and supervision when it is determined they constitute a threat to themselves, to others, or to the safety and security of the detention facility. Each such action shall be followed by an incident or disciplinary report and formal disciplinary proceedings, *if applicable,* as outlined in the above section.

(Emphasis supplied.) We note that the *Parker* case, 642 F.2d 865, on which the district court relied, does not control this case. *Parker* was decided before both *Hewitt* and *Kentucky Dept. of Corrections* and dealt with other provisions of the Florida Administrative Code relating to state prisons. *See* Fla.Admin.Code Ann. R. 33-3.08.[2] We therefore must assay the specif-

---

**2.** Subparagraph (19) of that section provided in part:

The following procedures must be performed prior to placing an inmate in administrative confinement:

ic language involved here to see if it is mandatory within the meaning of *Hewitt* and *Kentucky Dept. of Corrections.*

Under the procedural language at issue in *Hewitt,* once the basic determination is made to place an inmate in administrative custody,

> The inmate shall be notified in writing as soon as possible that he is under investigation and that he will receive a hearing if any disciplinary action is being considered after the investigation is completed. An investigation shall begin immediately.... If no behavior violation has occurred, the inmate must be released as soon as the reason for the security concern has abated but in all cases within ten days.

*Id.* 459 U.S. at 471 n. 6, 103 S.Ct. at 871 n. 6. As the Court noted, this is "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed." *Id.* at 471, 103 S.Ct. at 871. In the case at bar, all that the code tells us is that after an inmate is placed in administrative confinement, such action shall be followed by a report "and formal disciplinary proceedings, if applicable, as outlined in the above section." What this seems to indicate is that if, following the imposition of administrative confinement, an investigation leads to the levying of charges, the procedures applicable to disciplinary infractions shall be invoked. But if an inmate's administrative confinement is unconnected with the disciplinary process, e.g., if he were confined for his own protection, there would be no requirement for further proceedings. As in *Kentucky Dept. of Corrections,* 109 S.Ct. 1904, these provisions lack "the requisite relevant mandatory language," *id.* at 1910, to create a liberty interest. "[T]he regulations are not worded in such a way that an inmate could reasonably expect to enforce them against the prison officials." *Id.* at 1911. *Cf. Barfield v. Brierton,* 883 F.2d 923, 936–37 (11th Cir.1989) (Florida

regulations governing youthful offenders sufficiently explicit and mandatory to create a liberty interest).

We therefore conclude that there was no liberty interest created by the rule at issue in this case. We affirm, although on a different analysis, the grant of summary judgment for defendants.

### Access to Courts

■ Plaintiff next claims that he was denied access to his lawyer, library and other materials, and the courts during his time in administrative confinement. Specifically, he alleges the following deprivations: on August 20, 1986, he was refused permission to call his attorney (Complaint, Para. 11); on the following day he was again denied permission to call his attorney and was denied his request for pens, paper, cases, stamps, envelopes, correspondence with his attorney, and civil rights forms (Para. 13); on August 25 he was refused his unidentified "legal materials" (Para. 17); on August 30 he was refused paper, pen, envelope, and stamp "to write a letter to the courts" (Para. 19); and during the entire period he was denied access to a law library and correspondence from his attorney (Para. 24).

As background for consideration of these claims, we note that during the nearly two-and-one-half years of incarceration in the Indian River jail, plaintiff at all times had the services of at least one of two attorneys who was working on his capital case and its resentencing. Plaintiff also had brought two civil actions against the county and jail officials. Neither was a live issue at the time of the events which concern us, one and possibly both having been dismissed. Moreover, nowhere in plaintiff's extensive deposition is there any suggestion that he wished to do research for or draft or file a complaint concerning the conditions of his confinement. In fact, the complaint in this case was not filed until

---

(a) The Correctional Shift Supervisor must cause a Report of Administrative Confinement to be completed and the inmate must be informed of the reasons for his placement in administrative confinement. If the inmate wishes to make a statement, such statement shall be recorded on the form. Written, complete details and reason(s) as to why the inmate was placed in this status must also be given.

over a year after plaintiff was released from administrative confinement. Finally, immediately after plaintiff's sixteen-day administrative confinement, he was transferred to another facility for some three weeks before resentencing, during which time he was given free access to his lawyer and materials.

The district court deemed some of plaintiff's allegations conclusory, raising no factual issues, and the remaining allegations adequately countered by the fact that plaintiff has had the assistance of a lawyer in the instant case. As our summary of the pleadings and evidence indicates, at least some of the claims appear factual, and plaintiff was not represented by counsel in this case until three years after his confinement. We therefore proceed with our own analysis.

In *Bounds v. Smith*, 430 U.S. 817, 825, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977), the Supreme Court held that prisoners were entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Many circuits have understood *Bounds* to require some showing of prejudice or injury, that is, some showing of actual denial of access, to support such a claim. In *Hossman v. Spradlin*, 812 F.2d 1019, 1022 (7th Cir.1987), for example, where a state prisoner complained of losing library time by reason of being locked in his cell on six mornings, the court ruled:

> [W]e do feel it appropriate to require appellant to articulate, to some degree, the basis for his claim that his access to the courts was significantly (i.e.—in a constitutional sense) impaired. Such facts are presumably best known to appellant and, consequently, asking him to include them in his complaint, so as to survive a motion for summary judgment, is not too onerous a burden to require him to bear.[3]

**3.** *See also Bruscino v. Carlson*, 854 F.2d 162 (7th Cir.1988); *Howland v. Kilquist*, 833 F.2d 639 (7th Cir.1987). *Compare Martin v. Davies*, 917 F.2d 336 (7th Cir.1990) *with DeMallory v. Cullen*, 855 F.2d 442 (7th Cir.1988). *Bonner v. Coughlin*, 517 F.2d 1311, 1320 (7th Cir.1975)

Other circuits also have required a showing of injury or prejudice in cases involving minor or indirect restrictions on access to materials and assistance. *Magee v. Waters*, 810 F.2d 451 (4th Cir.1987) (actual injury required of city jail inmate who received books after delay and was allowed one hour of library time a week); *Mann v. Smith*, 796 F.2d 79 (5th Cir.1986) (no denial of access to county jail inmate with access to legal assistance but not library who nevertheless was able to file legally sufficient claim); *Cookish v. Cunningham*, 787 F.2d 1 (1st Cir.1986) (denial of access to law library, except for emergency matters, during two-week quarantine period does not state violation); *Hudson v. Robinson*, 678 F.2d 462 (3d Cir.1982) (actual injury must be shown; that library is noisy, open at inconvenient times, with no free supplies, and with notary not always available does not state claim); *Twyman v. Crisp*, 584 F.2d 352 (10th Cir.1978) (use of library restricted to 2 hours a week did not lead to any prejudice, so no denial of access). *Cf. Peterkin v. Jeffes*, 855 F.2d 1021 (3d Cir. 1988) (summary judgment not appropriate in systemic challenge of death row prisoners to denial of access to libraries and inmate law clinic workers).

Consistent with this body of caselaw, we see no denial on this record. We have been able to discern no relation between the alleged refusals of materials, depositions, telephone calls, mail, and even pen and paper for a proposed "letter to the courts" and any legal proceeding which could have been affected by the refusals. Plaintiff's two civil actions were moribund, if not extinct, and he has made no argument that he was hampered in these actions. Although plaintiff could not read depositions relevant to his resentencing hearing during the confinement period, he had access to them for a week earlier, had full access during the trial, was able to suggest questions to his attorney at trial, and could pinpoint no prejudice in the proceedings, asserting only

(Stevens, J.) had earlier foreshadowed this line of cases ("We may assume ... that an intentional taking of a prisoner's legal materials that results in an interference with his access to the courts violates this duty [not to abridge access].")

that he did not always know in advance "what a witness was going to testify to." [4] Finally, there was no allegation in the complaint or in plaintiff's deposition that he was contemplating a challenge at that time to the conditions of his confinement. Indeed, the delay of little more than two weeks in initiating a proceeding that he delayed pursuing for a further year and that ultimately would take two-and-a-half years to reach final judgment in the district court is inconsequential.

■ We resist making any sweeping declaration concerning the need for a prison inmate to establish prejudice arising out of alleged restrictions of his access to courts. In some cases, the prejudice inheres in the specific facts. *See Wright v. Newsome*, 795 F.2d 964 (11th Cir.1986) (complaint improperly dismissed when it alleged the seizure of legal pleadings and destruction of other legal papers relevant to plaintiff's challenge to his conviction). In many class actions the challenge is systemic, embracing the basic adequacy of materials and legal assistance made available to all or subgroups of the prison population. In still other cases the conditions challenged obviously go to the heart of any meaningful access to libraries, counsel, or courts. But the instant case is of the genre at the minimal end of the deprivation spectrum. That is to say that the alleged deprivations are of a minor and short-lived nature and do not implicate general policies. In such a case, we think both policy and the prevailing state of the law require an inmate to articulate facts indicating some prejudice such as being unable to do timely research on a legal problem or being procedurally or substantively disadvantaged in the prosecution of a cause of action. *See DeMallory v. Cullen*, 855 F.2d 442, 448–49 (7th Cir.1988) (reviewing cases distinguishing minor and indirect deprivations that require a showing of prejudice from direct and continuous deprivations that require no such showing).

We conclude that the allegations and evidence before the court pointed to such mi-nor and short-lived impediments to access that the absence of any indications of ultimate prejudice or disadvantage dictates our affirmance of summary judgment for defendants on this claim.

*Eighth Amendment*

■ In his complaint and deposition, plaintiff averred that the following conditions violated the Eighth Amendment proscription of cruel and unusual punishment: confinement in a cold cell with no clothes except undershorts and with a plastic-covered mattress without bedding; filth on the cell's floor and walls; deprivation of toilet paper for three days; deprivation of running water for two days; lack of soap, toothbrush, toothpaste, and linen; and the earlier occupancy of the cell by an inmate afflicted with an HIV virus. The averments of a cold cell were supplemented by specifics: that the temperature was as low as 60 degrees, that it was "ice cold", that plaintiff slept on the floor and on occasion huddled with a roommate, sleeping between two mattresses.

There was, of course, evidence to the contrary. Captain Baird deposed that the temperature in plaintiff's cell was governed by the same thermostat that controlled areas occupied by nurses and dispatchers and that no one had complained of the temperature. He admitted, however, that people in these areas were clothed, except for inmates having physical examinations who would temporarily be unclad. Baird also deposed that plaintiff had soap, toothpaste, and toothbrush, and that a water cut-off, caused by another inmate, lasted only several hours. He justified keeping plaintiff without clothes and bedding by the fact that Chandler had once observed an escape where prisoners had used sheets, twisting and jumping on them. Baird also explained that the inmate with HIV virus had occupied the cell five months earlier and that it had been cleaned since then.

The district court, citing *Sheley v. Dugger*, 833 F.2d 1420, 1429 (11th Cir.1987) and

---

**4.** In addition, plaintiff was represented by counsel at his resentencing trial, meeting the requirement set by *Bounds* for meaningful access.

*Bounds,* 430 U.S. at 828, 97 S.Ct. at 1498 (meaningful access may be met by providing assistance from persons trained in the law).

*Newman v. Alabama,* 559 F.2d 283, 291 (5th Cir.1977), *rev'd in part on other grounds sub nom. Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1977), stated that "where a plaintiff is provided with adequate food, clothing and sanitation, the conditions of solitary confinement do not on their face violate the Eighth Amendment." From this the court concluded that plaintiff's allegations did not support a finding that there had been a violation. This conclusion, of course, compelled a finding that defendants enjoyed qualified immunity.

We suspect that the district court was beguiled by a simplistic trilogy of conditions that, while convenient as illustrative shorthand, cannot preclude a fact-intensive inquiry under constitutional standards. Those standards are set forth in *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981), in which the Court began its analysis by recognizing that there is "[n]o static 'test.'" Prohibited punishments include those which "involve the wanton and unnecessary infliction of pain," including "pain without any penological purpose", or which are "grossly disproportionate to the crime warranting imprisonment," *id.* at 347, 101 S.Ct. at 2399. Further, conditions that "deprive inmates of the minimal civilized measure of life's necessities," *id.,* are violative of the "contemporary standard of decency that [the Court] recognized in [*Estelle v. Gamble,* 429 U.S. 97, 103–104, 97 S.Ct. 285, 290–91, 50 L.Ed.2d 251 (1976)]," *id.* We observe that it was not without significance to the Court in *Rhodes,* in assessing the effect of double celling in the Southern Ohio Correctional Facility, that "though small, the cells in SOCF are exceptionally modern and functional; they are heated and ventilated and have hot and cold running water and a sanitary toilet." *Id.* at 349 n. 13, 101 S.Ct. at 2400 n. 13.

The two cases cited by the district court, *Sheley* and *Newman,* lend no support to the summary judgment below, for each specified the basic requirement to supply clothing to a prisoner. And undershorts is a flimsy surrogate for clothing. Moreover, as the district court noted, both required the provision of basic sanitation.

Nor can we find other cases in this or our antecedent circuit that support the judgment. In *McMahon v. Beard,* 583 F.2d 172, 175 (5th Cir.1978), the court found no constitutional violation in holding a pretrial detainee in solitary confinement without any clothes and without mattress, sheets, or blankets for three months. It noted, however, the compelling consideration of dealing with an inmate with continuing suicidal tendencies, the fact that medical personnel saw the inmate during the period, and the fact that eventually the inmate was provided with paper clothing. Moreover, the case does not indicate that there was any issue of inadequate heat in the cell. The court specifically reserved the question of whether such conditions under other circumstances might violate constitutional standards.

Two decades ago, in *Novak v. Beto,* 453 F.2d 661, 666 (5th Cir.1971), a case involving a class action attack on the conditions of solitary confinement in Texas, the court upheld the system as applied, and took note that the Texas Department of Corrections complied with "virtually all" of its guidelines, *id.* at 669. Insofar as the issue of cell temperature and clothing was concerned, the relevant guidelines required that inmates be "given coveralls, a gown or some other form of clothing, i.e., tee shirt and undershorts, tee shirt and regulation trousers", and be "furnished with the necessary number of blankets to keep them warm." *Id.* at 668. In addition, the court distinguished that line of cases in which inmates were subjected to conditions lacking "basic elements of hygiene." *Id.* at 665 (citing cases). The court observed that the cells were sanitary and the inmate had been provided with toilet paper and other basic hygiene articles.

Other circuits have for some time recognized the temperature factor in assessing conditions of confinement. As far back as 1967, the Second Circuit reversed dismissal of a prisoner's complaint of exposure to extreme cold. *Wright v. McMann,* 387 F.2d 519 (2d Cir.1967). Subsequently, it

affirmed on the merits a finding of cruel and unusual punishment in confining an inmate for eleven days, naked, without soap, towels, or toilet paper, and without bedding of any kind, forcing the inmate to sleep on the floor, the temperature being "sufficiently cold to cause extreme discomfort". *Wright v. McMann*, 460 F.2d 126, 129 (2d Cir.1972).

Similarly, the Fourth Circuit, sitting in banc, found two sets of conditions of confinement involving the same prison inmate to violate the Eighth Amendment. *McCray v. Burrell*, 516 F.2d 357 (4th Cir. 1975). In the first, the inmate was confined for two days in a cell where a concrete slab was initially the inmate's bed. A mattress was furnished later during the first night, but no blankets were supplied. Although the record did not disclose the temperature in the cell, it was so cold that the inmate tore open the mattress and nestled inside. The inmate also was denied articles of personal hygiene. *Id.* at 365–66. The court held that in the case of an ordinary prisoner, these conditions were violative of the Eighth Amendment; the only justification would be such mental derangement on the part of the inmate that self-harm was a real danger, in which case immediate contact with a psychologist/psychiatrist was required. *Id.* at 368–69. The second set of conditions included another two-day confinement in a cell without clothing, blanket, or mattress, where the inmate claimed sleep was impossible and that he had to stand up most of the first night. He was also denied articles of personal hygiene. *Id.* at 367, 369. The court held that these conditions, too, violated the inmate's Eighth Amendment rights in the absence of mental derangement.

The Eighth Circuit has faced a situation similar to that now before us. *See Maxwell v. Mason*, 668 F.2d 361 (8th Cir.1981). The court affirmed a finding of cruel and unusual punishment in the confinement of an inmate to fourteen days in a solitary cell with no clothing except undershorts and no bedding except a mattress. Corrections officers had testified that the temperature would have been at least 70 degrees, but the inmate had "testified that he huddled in the corner of his cell to stay warm." *Id.* at 363. The court referred to its earlier decision in *Finney v. Arkansas Bd. of Corrections*, 505 F.2d 194, 207–08 (8th Cir.1974), in which the court stated that prisoners in punitive solitary confinement should not be "deprived of basic necessities including light, heat, ventilation, sanitation, clothing and a proper diet," and affirmed a denial of qualified immunity for two penitentiary officials. 668 F.2d at 365.

Finally, the Seventh Circuit has addressed two similar situations. In the first case, it reversed dismissal of a prisoner's complaint which alleged being placed in solitary confinement for three days without mattress, bedding, or blankets and without articles of personal hygiene. *Kimbrough v. O'Neil*, 523 F.2d 1057 (7th Cir.1975). In a more recent case, the court set aside summary judgment in *Lewis v. Lane*, 816 F.2d 1165 (7th Cir.1987), where two state prisoners alleged that the heat in their cells was maintained at an unreasonably low temperature during December 1983 and January 1984, *id.* at 1166, and that the lack of heat was "severe enough to produce physical discomfort," *id.*, at 1171 n. 10. Although an affidavit of officials averred that the temperature was always checked when complaint was made and always found to be between 68 and 72 degrees, the court said:

> An allegation of inadequate heating may state an eighth amendment violation. *See, e.g., Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir.1980) ("a state must provide ... reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (*i.e.*, hot and cold water, light, heat, plumbing)"). . . .

*Id.* at 1171 (footnote omitted).

We conclude from this body of caselaw that plaintiff is entitled to have the trier of fact determine whether the conditions of his administrative confinement, principally with regard to the cell temperature and the provision of hygiene items, violated the minimal standards required by the Eighth Amendment. We also conclude, although the district court did not reach the issue, that the right of a prisoner not to be con-

fined in a cell at so low a temperature as to cause severe discomfort and in conditions lacking basic sanitation was well established in 1986. The defendants therefore were not entitled to summary judgment on the basis of qualified immunity.

A final issue, which was briefly alluded to, was whether plaintiff suffered any harm from his allegedly chill incarceration. Defendants attempt to exploit plaintiff's deposition answers in cross examination that he did not suffer injury to his back or head or pneumonia or a cold and that he had not sought counselling to argue that in effect this was a case of *damnum absque injuria*. But plaintiff's description of sleeping on the floor with only underclothes and a mattress with a plastic cover in 60–degree "real cold" temperature was graphic, and his question, "What kind of effect would that have on you?" were sufficient to preserve the issue of harm. Moreover, he later unambiguously stated: "As far as being in solitary confinement or administrative confinement ... I'm sure I was depressed from it." This clearly poses the factual question whether plaintiff "suffered any pain, misery, anguish or similar harm, whether capable of estimation or not." *Cowans v. Wyrick*, 862 F.2d 697, 700 (8th Cir.1988).

We therefore conclude that summary judgment was inappropriate on the issue of whether the conditions of Chandler's confinement violated the Eighth Amendment.

AFFIRMED in part, REVERSED in part and REMANDED to the district court for further proceedings consistent with this opinion.