Douglas ADAMS and Gary Piccirillo, Plaintiffs,

v.

Roderick JAMES, Educational Supervisor, Polk Correctional Institution; J.F. Tompkins, Superintendent, Polk Correctional Institution; Don Merritt, Classification Supervisor, Polk Correctional Institution, Defendants.

No. 82–420–Civ–T–17.

United States District Court,
M.D. Florida,
Tampa Division.

June 18, 1992.

Douglas L. Adams, pro se.

Steven L. Seliger, Law Office of Steven L. Seliger, Quincy, Fla., for plaintiffs.

Kimberly Jeanene Tucker, State of Fla., Dept. Of Legal Affairs, Tallahassee, Fla., for defendants.

## ORDER

KOVACHEVICH, District Judge.

### I. Procedural History

*Pro se* Plaintiffs filed this civil rights complaint pursuant to 42 U.S.C. § 1983 on April 21, 1982, alleging that their transfer in job and institutional assignments unconstitutionally infringed on their right to file lawsuits and to assist other inmates with litigation. On January 28, 1983, Attorney Steven L. Seliger filed a "Notice of Attorney Appearance." On February 27, 1985, the District Court granted Defendants' motion for summary judgment and Plaintiffs appealed.

On April 18, 1986, the Eleventh Circuit Court of Appeals affirmed the District Court's decision in part, but remanded the case for further proceedings to permit Plaintiffs an opportunity to assert what *personal* constitutional right may have been infringed by their transfers. On May 14, 1986, Plaintiffs filed an amended complaint, and on June 19, 1986, Defendants filed a motion to dismiss the amended complaint. On October 3, 1986, the District Court denied Defendants' motion to dismiss. On April 21, 1987, Defendants filed a renewed motion for summary judgment. (Doc. No. 135). In their renewed motion for summary judgment, Defendants claim that:

1) Plaintiffs fail to allege facts sufficient to state a cause of action upon which relief can be based;

2) Plaintiffs attempt to hold Defendant Tompkins liable under a theory of *respondeat superior* which is an invalid theory of recovery under Section 1983;

3) Defendants are entitled to qualified good faith immunity.

On April 29, 1987, the parties argued the summary judgment motion at a pre-trial conference. Plaintiffs' counsel stated that his oral response would be his response for the record. (Transcript of Proceedings, p. 11).

On May 26, 1987, the District Court partially denied Defendants' summary judgment motion as to the issues of sufficiency of the complaint and qualified immunity. The District Court held:

Defendants concede that if the actions taken by the prison officials were punishment in response to requests for improved conditions of confinement or for writ-writing activity then the good faith immunity would be unavailable. Defendants further submit that the reassignment of Plaintiffs was in recognition of their obligation to maximize the access to the Courts of all the inmates at Polk Correctional. Additionally, Defendants assert that the transfer of Plaintiffs from Polk to Union Correctional was to facilitate their writ-writing, rather than as punishment for it, since Union houses a major law library.

This Court finds it does not agree with the parties in this cause that there are no issues of fact as to the issue of good faith immunity. As conceded by Defendants, if the actions taken were punishment for writ-writing or complaints regarding conditions of confinement, the immunity defense must fail. These are precisely the questions that have to be resolved by the fact-finder(s) in this case. The Court cannot say as a matter of law that the qualified immunity defense is or is not available when there are still such outstanding factual questions which relate directly to that issue.

The Court ordered Plaintiffs to respond to the issue of the liability of Defendant Tompkins under the theory of respondeat superior. The District Court *did not rule* on whether Plaintiffs' *personal* constitutional rights had been infringed by Defendants' transferring Plaintiffs.

On June 8, 1987, Plaintiffs filed their response to Defendant Tompkins' motion for summary judgment on the issue of *respondeat superior*. On June 12, 1987,

Defendants filed an interlocutory appeal of the Court's order partially denying Defendants' motion for summary judgment.

On November 21, 1988, the Eleventh Circuit Court of Appeals dismissed Defendants' interlocutory appeal, and affirmed the District Court's determination that material facts remained in dispute. The Appellate Court remanded the case to the District Court for further proceedings.

On December 12, 1988, the District Court referred the case to Magistrate Paul Game for further proceedings. On January 13, 1989, Defendants filed a motion to file a supplemental memorandum of law in support of their April, 1987, motion for summary judgment. The Court returned the supplemental memorandum and instructed Defendants not to submit the memorandum until the Court ruled on their motion for leave to file a supplemental memorandum.

On July 11, 1991, Defendants filed a motion to dismiss the case for lack of prosecution. Plaintiffs responded and on July 24, 1991, the Court denied Defendants' motion to dismiss but granted Defendants' motion for leave to file a supplemental memorandum in support of their motion for summary judgment. On November 25, 1991, the Court ordered Defendants to file a supplemental memorandum in support of their motion for summary judgment. On December 26, 1991, Defendants filed the supplemental memorandum. (Doc. No. 155). Defendants served a copy of the supplemental memorandum on Plaintiff's counsel. Plaintiffs have not responded to the supplemental memorandum of law in support of Defendants' motion for summary judgment. Plaintiffs are proceeding on their amended complaint filed May 14, 1986. (Doc. No. 99). Attorney Seliger continues to represent Plaintiffs in this action.

## II. Plaintiffs' Allegations/Claims

In June, 1981, Plaintiff Adams was assigned to the inmate law clerk position at Polk Correctional Institution (PCI). In December, 1981, Piccirillo was assigned to the same position. Plaintiffs completed an inmate legal training course and, as part of their assigned responsibilities, assisted other inmates in filing internal institutional grievances. Plaintiffs, like many other inmates, prepared and filed lawsuits against PCI for allegedly unlawful conditions of confinement that violated inmates' constitutional rights.

Plaintiffs claim that, as a result of the litigation they filed, Defendants James and Merritt took action prohibiting Plaintiffs from assisting in or preparing the filing of any further litigation, effectively denying them access to courts. They claim that this action was taken in direct retaliation for Plaintiffs' exercise of their First Amendment right. Further, Plaintiffs claim that, "as a result of the litigation filed by Plaintiffs, Defendant Tompkins caused them to be transferred to a more punitive prison [Union Correctional Institution]." Further, Plaintiffs claim that

> The acts by the defendants to retaliate against the plaintiffs in their filing and participation in of litigation designed "to bring about social change and protect constitutional rights in the prison" violated the First and Fourteenth Amendments [1] to the United States Constitution.

(Amended Complaint, p. 5).

Plaintiffs seek declaratory relief, injunctive relief for Plaintiff Adams who is currently incarcerated, compensatory and actual damages, punitive damages, costs, and reasonable attorney's fees. (*Id.* at 6).

## III. Defendants' Allegations

Defendants claim that Plaintiffs' job reassignments resulted from their unethical practices and work habits, belligerent attitude, and anti-institutional behavior. (Defendants Motion To Dismiss and/or for Summary Judgment, filed February 1, 1982, Appendix 1). Further, Defendants allege that Plaintiffs were suspected of charging for their services as law clerks, in direct violation of Department of Corrections' Policy and Procedure Directive 4.10.-51, and sabotaging law library typing

---

**1.** The Court notes that at the pre-trial conference, the following dialogue took place:

THE COURT: And you're making a due process argument incidentally with regard to the failure to provide a proceeding for these people under those circumstances [as to whether Plaintiffs charged for services]?

MR. SELIGER: No, I don't think we have a due process claim.

equipment. (*Id.*) Defendants allege that Plaintiffs' claim is based solely on their bald assertions of retaliatory transfer that "effectively halted Plaintiffs' ability to exercise their First Amendment rights." (Amended Complaint, p. 5). Defendants and Plaintiffs agree that Avon Park's law librarian requested that Plaintiffs be transferred to a major law library facility because of the far greater than average number of requests for supplementary materials and copies of materials unavailable at PCI's law library. (Transcript of Proceedings, p. 5).

Defendants claim, that, in the prison context, inmates do not file formal charges against each other for fear of retaliation from their fellow inmates. Therefore, Defendants argue that PCI inmates would not have directly complained about Plaintiffs' charging for their law clerk services. Further, they claim that Plaintiffs fail to allege facts to support their assertion that their job reassignment impacted their ability to pursue litigation on their own behalf. In addition, they claim that Plaintiffs' transfers to Union Correctional Institution (UCI) was not "more punitive" with respect to Plaintiffs' ability to obtain access to Courts, which Defendants allege is the issue in the present case.

In fact, Defendants assert that Plaintiffs' access to Courts was improved because UCI has a major law library while PCI had a minor law library. (Affidavit of Earnest Mathis, Law Library Coordinator for the DOC.) Further, Defendants point out that Plaintiffs initiated and participated in, as law clerks, significant litigation after their transfer to UCI. (*See* Defendants' Motion for Summary Judgment, filed April 21, 1987, Exhibit C—Affidavit of Sybil Powell with attached list of cases). Further, Defendants point out that Plaintiff Adams subsequently held the position of law clerk after his transfer to Tomoka Correctional Institution. Plaintiff Adams is currently housed at Apalachee Correctional Institution. Plaintiff Piccirillo is no longer incarcerated.

IV. Standard for Summary Judgment

Summary judgment should be entered only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Warrior Tombigbee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983) (quoting rule). "The party seeking summary judgment bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Id.* "In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." *Id.* (quoting *Clemons v. Dougherty County, Georgia*, 684 F.2d 1365, 1368 (11th Cir.1982)). *See also Thrasher v. State Farm Fire & Casualty Co.*, 734 F.2d 637 (11th Cir.1984).

Mere verification of a party's own conclusory allegations is not sufficient to oppose a motion for summary judgment for

> [w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Fed.R.Civ.P. 56(e). *See also Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984). The "mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2nd Cir.1980). More importantly, summary judgment is not only proper, but required, when a party's response to the court's notice consists of nothing "more than a repetition of his conclusional allegations." *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir.1981), *cert. denied*, 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982). This Court is satisfied that no genuine issues of material fact remain and that Defendants' motion for summary judgment should be entered in favor of Defendants because Plaintiffs have not supported their allegation of violation of a *personal* consti-

tutional right nor their allegations of retaliatory transfer. In addition, Plaintiffs have provided no evidence of that the transfers had a detrimental impact on Plaintiffs' ability to file litigation aimed at bringing about social change in the prison context.

## V. Discussion

### A. Personal Constitutional Right

On April 18, 1986 the Eleventh Circuit Court of Appeals remanded this case because "Adams and Piccirillo, on appeal, argue that they pleaded and sought to assert in the district court a first amendment right personal to them, a right other than the right to hold a particular job or to be assigned to a particular institution."

On May 14, 1986, Plaintiffs filed an amended complaint. Plaintiffs had the opportunity to define the *personal* right they were claiming in their amended complaint. They did not do so. Their complaint read, "This is an action brought to redress the violations of plaintiffs' constitutional rights by defendants acting under color of law. Specifically, the plaintiffs' assert a first amendment right personal to them and that they were penalized for the exercise of this right." This Court cannot determine, based on this broad conclusory statement, just what right Plaintiffs are asserting is personal to them.

On April 29, 1987, the Court held a pretrial and status conference. The Court has scrutinized the transcript of the proceedings to determine whether Plaintiffs' counsel defined the contours of a first amendment right personal to Plaintiffs. First, the Court considered Plaintiffs' claim that law clerks were "trained by West for whatever benefit that is, they do it and they have some on-the job experience and they're doing it, they're proceeding along. It would be—even if they weren't even if I was a lawyer and I was working in an office and someone told me after I've been working on a case for six months you can't work on this case anymore, that's going to disrupt the progress of that case." (Transcript of Proceedings, p. 33). Earlier, Counsel had stated: "The point is, and this is why I said earlier that while it doesn't really matter and as your analysis pointed out that they were inmate law clerks, it does matter because that is the visible position that a prisoner holds in a correctional setting for doing this kind of work. And when—and part of that work is suing the very people who supervise them. Our Plaintiffs were suing the superintendent, were suing other people in the institution ..." (*Id.* at 29). Counsel for Plaintiffs continued that "practically the only people who would raise this kind of issue would be people generally in positions where they're doing this kind of work. We would generally not have a cook who was transferred from being a cook to a janitor raise this kind of issue ..." (*Id.* at 35).

The Court does not agree. To the contrary, the Court has experienced an increasing number of prisoner complaints addressing the constitutionality of job changes, conditions of confinement, lack of access to Court, lack of legal materials and other actions. Inmates file complaints against correctional officers at their present and former places of incarceration; many of these complaints are related to social change. Many inmates are transferred during the time they are pursuing their complaint. An inmate does not have that culminated in the state's being forced to develop a plan for ensuring prisoners meaningful access to Courts. Harold Hooks was not a law clerk. (*See Hooks v. Wainwright,* 536 F.Supp. 1330 (1982); *Hooks v. Wainwright,* 775 F.2d 1433 (1985). *See also, Costello v. Wainwright,* 539 F.2d 547 (5th Cir.1976); *Stapleton, et al. v. Dugger, et al.,* Case No. 88–14178 (S.D.Fla.)).

The Court also considered the following statements by Counsel for Plaintiffs:

When we first appealed the decision that you made, [granting summary judgment], part of the problem was we never could convince you of what we thought our cause of action was. And when we argued it before the Eleventh Circuit, I don't—never really persuaded the Eleventh Circuit that we, if fact, we actually got one, I think I persuaded Judge Clark, that we actually did allege that cause of action. But basically, they remanded it back to you to let us plead a cause of action which we, I thought, had already

alleged. However, there is their opinion which Ms. Tucker and I have spent hours talking about in terms of really trying to figure out precisely what the parameters of this particular right they have identified is and to that extent, I think she does raise a legitimate question if in fact the Eleventh Circuit decision in this case was a decision that somehow, although applying the general principle of retaliation, focused it in a creative way in a prison setting because of the constraints that Ms. Tucker has raised and this Court has raised about we don't want to be looking into every decision a correctional officer makes. We don't—every time an inmate is a cook and becomes a janitor, what kind of proceedings are the potential consequences of those decisions? Does the Correctional institution have to keep a written records every time they make that decision, so that there is a justification contemporaneous with that someone can ultimately in hindsight look back to see on and so it may be that that's what the Eleventh Circuit did. I'll be honest with you, I don't know.

(Transcript of Proceedings, pp. 40–41.)

Counsel for Plaintiffs alleges that only law clerks would be involved in claiming the personal constitutional right at issue. Counsel for Defendants disagreed. She stated:

I disagree with Mr. Seliger as to the fact that this will be a unique question to only people that are law clerks. Personally, I see inmates as being real innovative with where they find constitutional violation. They do it every day for failure to get recent movies, there's always some sort of claim, Fourth Amendment claim, Sixth Amendment claim, First Amendment claim and I see that there would be a host of things. I jotted some down where I can see beyond the law clerk issue how we're going to be getting in all these transfers and opening the door. For instance, Eighth Amendment claim, we're going to be talking about any time an inmate, for instance, with respect to Union Correctional Institution, Mr. Seliger said it's more punitive, you can die easier there, it's more violent. That means any inmate that's in Union Correctional Institution or gets transferred we're going to be looking at an Eight Amendment claim, I was transferred in retaliation or I was filing lawsuits, I have been grieving this, that or the other thing, for filing grievances because I'm black, because I'm Muslim; we're going to get into a host of things.

On the First Amendment issue, my mom is at River Junction Correctional Institution, I don't want to go to UCI, I don't want to go to Blake. Any time an inmate has, for instance, transferred First Amendment associational rights, I'm being transferred and my association rights have been infringed because I'm black and they don't like me or whatever. I see it's a much broader issue than just this one limited law clerk aspect and I don't see that this is particularly analogous to Mr. Seliger's point about having a case taken away from them after he started it. The issue here is not the right to do the job of the law clerk, the issue is your right to access to Courts. The Plaintiffs under this circuit or any other circuit have no right to a particular job assignment. They don't have a right to be a law clerk, they have a right under the Eleventh Circuit opinion to move for social change in the prison context and even after their job transfer and even after their transfer of institution, they continue to have the ability to exercise that right.

(*Id.* at pp. 43–44).

■ After carefully studying the complaint and transcript of the pre-trial conference, this Court concludes that Plaintiffs are alleging that, as law clerks they have a unique personal right to hold the particular job of law clerk, or to be assigned to a particular institution because they are moving for social change in that institution by filing suits, as law clerks, against officers in that particular institution relative to the conditions of confinement in that institution; and that this personal right exists because as law clerks they are more visible than other inmates in instituting legal action against correctional institutions.

This Court can find no basis in fact or law to support this allegation. Plaintiffs

have not cited *any case law* relevant to the personal right asserted. Nor have they asserted *any facts* to support their claim that law clerks have a personal right to remain in that position, or in any particular institution, absent retaliation.

■ "An assignment to the job of law clerk does not invest an inmate, or those he assists, with a property interest in his or her continuation as a law clerk," *Adams v. James*, 784 F.2d 1077, 1079 (11th Cir.1986), Prisoners are not entitled to remain at a particular penal institution. *Adams v. James*, 784 F.2d at 1079 (citing Fla.Stat. § 945.09(3)); *see, Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). All inmates, not just law clerks, have the constitutionally protected right to sue for social change. "Litigation undertaken in good faith by a prisoner motivated to bring about social change and protect constitutional rights in the prison is a 'form of political expression' and 'political association' just as the Supreme court has held litigation to be for certain organizations outside the prison setting." *Adams v. James*, 784 F.2d at 1081.

The fact that law clerks might be in a more visible position than other inmates does not, in the opinion of this Court, vest them with a personal right, unique only to law clerks, to remain in the position of law clerk at any institution. Many inmates are visible in the pursuit of their claims. Non-law clerks have brought about social change and altered the conditions of confinement through their litigation.

On remand, the Eleventh Circuit instructed the District Court in the present case:

Adams and Piccirillo argue that they pleaded and sought to assert in the district court a first amendment right personal to them, a right other than the right to hold a particular job or to be assigned to a particular institution. The pleadings are broad enough to encompass such a theory, but that theory was not ruled on in the district court.

*Adams v. James*, 784 F.2d at 1081.

Pursuant to the Appellate Court's instructions, this Court holds that Plaintiffs' theory of their having a constitutional right personal to them as law clerks has no merit. Plaintiffs made no attempt in their amended complaint to clarify the parameters of the alleged personal constitutional right, and although this Court reopened this case for the specific purpose of allowing Plaintiffs to identify the personal constitutional right they pleaded and for the Court to rule on that theory, Plaintiffs failed to support their assertion of a personal constitutional right with any facts or law.

### Qualified Immunity

■ Officials pleading qualified immunity are liable for damages only if the contours of the right they are alleged to have violated are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

■ Pursuant to *Howell v. Evans*, 922 F.2d 712, 718 (1991), in determining whether the defense of qualified immunity is available, the District Court must

... determine whether the allegedly violated right was clearly established, and then to determine if, given the facts most favorable to the plaintiff, a reasonable official would have known that the alleged actions violated that right. *Anderson v. Creighton*, 483 U.S. 635, 642, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987).

In the present case, there was no clearly established right that established a federal cause of action under 42 U.S.C. § 1983 for violation of a personal constitutional right unique to law clerks at the time Plaintiffs filed their complaint. Nor does there appear to be such a right at the present time. Therefore, Plaintiffs would be entitled to qualified immunity on this issue.

### B. Retaliatory Transfer

■ While law clerks do not have a personal right to remain in any institution, or in the position of law clerk, they, and all inmates have a right to be free of retaliatory transfer for the exercise of a constitutional right. *Adams v. James*, 784 F.2d at 1079; *see, Bridges v. Russell*, 757 F.2d

1155 (11th Cir.1985). Claims alleging retaliation must be factual and mere conclusory allegations of unconstitutional retaliation will not suffice. *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir.1990).

Counsel for Plaintiffs stated that the major issue in this case is that of retaliatory transfer. (Transcript of Proceedings, p. 12, 19.) "Government cannot retaliate against a citizen for that exercise [of a First Amendment right]. That's the issue whether or not the Government retaliated against a citizen for the exercise of a First Amendment right." *Id.*

██ In the "free world" context, an act in retaliation for exercise of a constitutionally protected right is actionable under the Civil Rights Act, 42 U.S.C. § 1983, even if the act, when taken for different reasons would have been proper. *Mount Healthy City board of Education v. Doyle*, 429 U.S. 274, 283, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977). This is true even where Plaintiff is denied a privilege to which he has no protected property or liberty interest. *Id., accord Adams v. James*, 784 F.2d at 1080. Retaliation is a question of *causation*, and the test applied in the "free world" context is a "but for" analysis.

██ The Eleventh Circuit Court of Appeals has declined to follow the "but for" analysis in the context of prisoners' retaliation suits, "to the extent that the 'but for' test places a greater burden of proof on the inmate." *Adams v. Wainwright*, 875 F.2d 1536, 1537 (11th Cir.1989) (citing *Hall v. Evans*, 842 F.2d 337 (11th Cir.1988) (table decision vacating district court order granting summary judgment to Defendants based on "but for" analysis)).[2] However, in the prison context, there must be a "mutual accommodation" between the penal institution's legitimate needs and goals and the prisoner's retained constitutional rights. *Bell v. Wolfish*, 441 U.S. 520, 546, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979); *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974).

In evaluating a claim of retaliatory transfer for the exercise of First Amendment

rights, the Court must determine whether a prison action is *reasonably* related to legitimate penological interest, which requires weighing the following factors: Whether there is a valid rational connection between the prison action and the legitimate government interest put forward to justify it; whether there are alternative means of exercising the right that remains open to prison inmates; and impact of accommodation of asserted constitutional right on guards and other inmates and on allocation of prison resources generally, but it is not necessary to show that the least restrictive alternative has been adopted, and substantial deference is to be accorded to the prison authorities. *Frazier v. Dubois*, 922 F.2d at 562 (citing *Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987)). Great weight should be given to the judgment of prison administrators, who are considered to be best able to run prison institutions. *Id.* This Court, having applied these factors to the facts in the present case, finds no merit in Plaintiffs' allegations of retaliatory transfer, and will grant Defendants' motion for summary judgment for the following reasons:

*Turner* Weighing Factors

1. Whether there is a valid rational connection between the prison action and the legitimate government interest put forward to justify it.

*Transfer from law clerk to new work position*

██ Prisoners have a constitutional right to access to the Courts. "[t]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977).

██ Defendants have submitted sworn statements that Plaintiffs were removed from their law Clerk positions after other

---

**2.** This Court takes judicial notice of the history of Plaintiff Adams' post-filing retaliation claims, cited in the District Courts's opinion (Case No.

84–0399–Civ–J–14 (M.D.Fla. Dec. 8, 1987)), from which Adams appealed in *Adams v. Wainwright*, 875 F.2d at 1536.

inmates had complained that they were charging for their services, in violation of Department rules. (Defendants Motion To Dismiss and/or for Summary Judgment, filed February 1, 1982, Appendix 1). Plaintiffs' counsel has stated that he could submit Plaintiffs' affidavits swearing that Plaintiffs did not charge. For purposes of this summary judgment order, the Court will assume that such affidavits have been filed.[3]

Plaintiffs' Counsel argued that:

No, the fact finder would have to be a Jury because my clients would say we did not charge for it, we never charged for it and the Defendants would say we had information that you charged for it. And for instance, I would ask them show me some documentation, you have a procedure for recording that information, you can—if you believe that was the case, you can give these guys a disciplinary report for doing it. Did you ever do that? I've asked them on Interrogatories and they have no written documentation of that occurring. It would be their word that they got information that said this occurred against my client's word saying that they never charged and a fact finder would believe my clients or believe the Defendants.

(Transcript of Proceedings, p. 20).

This Court will not act as a fact finder to determine whether Plaintiffs charged or did not charge. However, this Court is aware that, as Defendants claim, in the prison context, inmates do not file formal charges against each other for fear of retaliation from their fellow inmates. Consequently, Counsel's argument that Defendants should have disciplined Plaintiffs for charging for their services is not persuasive. In this Court's opinion, Defendants' chances of securing an inmate to file a formal charge against a law clerk, who, as Plaintiffs point out, is very visible, and apparently, in this case, a very powerful adversary, were very slim. Consequently, this Court does not attempt to determine

whether or not Plaintiffs charged. In the context of access to Courts, prison authorities must protect inmates unskilled in the law from abuse and extortion by inmate law clerks who give preferential treatment or charge for their services. Therefore, this Court has determined that Defendants' action of reassigning Plaintiffs, based on their suspicions that Plaintiffs were charging for their law clerk services, was reasonable and rationally and validly connected to the government interest of protecting inmates from exploitation by one another.

■ Further, Plaintiffs fail to support their assertion that their job reassignment impacted on their ability to pursue "social change" litigation. A properly motivated transfer of job or institutional assignment should not be subject to exhaustive challenge by the affected inmate simply because he was allegedly involved in the exercise of a First Amendment right at the time of his transfer. *Frazier v. Dubois*, 922 F.2d at 562 n. 2 (citing *Turner v. Safley*, 482 U.S. at 91, 107 S.Ct. at 2262).

*Transfer to Union Correctional Institution*

Defendants submitted undisputed evidence that the law librarian at Avon Park Correctional Institution requested that Plaintiffs be sent to a major law library facility, after the library copied more than 2000 pages of materials Plaintiffs specially requested. (Transcript of Proceedings, p. 5). Avon Park had the burden of providing that information through use of limited staff resources because it was the closest major law library facility to PCI. The fact that UCI had, at the time of the transfer, a major library is undisputed. *Id.* Therefore, this Court finds that Defendants' act of transferring Plaintiffs to UCI action, was validly, rationally connected to the government interest of reducing the burden on limited Department of Corrections staff and resources by providing Plaintiffs' direct access to a major law library.

Therefore, this Court finds that summary judgment in favor of Defendants is appropriate on the first *Turner* factor.

---

**3.** The Court, at the pre-trial conference, told Plaintiff's counsel that he would be informed of any needed affidavits.

2. Whether there are alternative means of exercising the right that remain open to prison inmates

 Plaintiffs claim that, as a result of the litigation they filed, Defendants James and Merritt took action prohibiting Plaintiffs from assisting in or preparing the filing of any further litigation, effectively denying them access to courts. The Eleventh Circuit has resisted "making any sweeping declaration concerning the need for a prison inmate to establish prejudice arising out of alleged restrictions of his access to courts." *Chandler v. Baird*, 926 F.2d 1057 (11th Cir.1991).

In some cases, the prejudice inheres in the specific facts. *See Wright v. Newsome*, 795 F.2d 964 (11th Cir.1986) (complaint improperly dismissed when it alleged the seizure of legal pleadings and destruction of other legal papers relevant to plaintiff's challenge to his conviction). In many class actions the challenge is systemic, embracing the basic adequacy of materials and legal assistance made available to all or subgroups of the prison population. In still other cases the conditions challenged obviously go to the heart of any meaningful access to libraries, counsel or courts. But the instant case is of the genre at the minimal end of the deprivation spectrum. That is to say that the alleged deprivations are of a minor and short-lived nature and do not implicate general policies. In such a case, we think both policy and the prevailing state of the law require an inmate to articulate facts indicating some prejudice such as a being unable to do timely research on a legal problem or being procedurally or substantively disadvantaged in the prosecution of a cause of action. *See DeMallory v. Cullen*, 855 F.2d 442, [448–49] (7th Cir.1988) (reviewing cases distinguishing minor and indirect deprivations that require a showing of prejudice from direct and continuous deprivations that require no such showing).

*Chandler v. Baird*, 926 F.2d at 1063.

Inmate Chandler was placed in confinement and had no access to his legal materials, depositions, telephone calls, mail nor even pen and paper for a proposed "letter to the courts." The Appellate Court held that "the delay of little more than two weeks in initiating a proceeding that Chandler delayed pursuing for another year and that ultimately would take two-and-a-half years to reach final judgment in the district court is inconsequential." *Chandler v. Baird*, 926 F.2d at 1063. "We conclude that the allegations and evidence before the court points to such minor and short-lived impediments to access that the absence of any indications of ultimate prejudice or disadvantage dictates our affirmance of summary judgment for defendants on this claim." *Id.*

Likewise, in the present case, the "absence of any indications of ultimate prejudice or disadvantage" negates any claim that Plaintiffs make that they had no alternative means of exercising their right to file law suits against PCI except as law clerks at PCI. Plaintiffs have not shown that their ability to litigate was "effectively halted" by their transfers, either from the law clerk position, or from PCI to UCI. Rather, the record shows that Plaintiffs filed and litigated scores of cases in the state and federal courts as well as in the state administrative system subsequent to their transfer. (*See* Affidavit of Nona Brown, Administrative Assistant to the General Counsel, Florida Department of Corrections and Sybil C. Powell, Administrative Assistant, Florida Department of Legal Affairs, [Exhibits B and C to Defendants Motion for Summary Judgment filed April 21, 1987]). Both Plaintiffs had jobs as law clerks subsequent to their transfers. A record clearly demonstrating the ability to initiate and prosecute *pro se* claims in federal, state and administrative courts is inapposite of a legitimate claim of denial of access. *See, Perry v. Jones*, 437 F.2d 759 (5th Cir.1971); *Conway v. Dunbar*, 448 F.2d 765 (9th Cir.1971); *Conway v. Oliver*, 429 F.2d 1307 (9th Cir.1970); *Wilson v. Prasse*, 404 F.2d 1380 (3rd Cir.1968) *on remand*, 325 F.Supp. 9 (1971), *aff'd*, 463 F.Supp. 109 (9th Cir.1972); *Lingo v. Boone*, 402 F.Supp. 768 (N.D.Cal.1975); *Urbano v. McCorkle*, 334 F.Supp. 161 (D.N.J.1971). *See, also, Carter v. Telectron, Inc.*, 452 F.Supp. 939 (S.D.Tex.1976).

In *Lingo v. Boone*, 402 F.Supp. 768, the District Court was presented with a record reflecting only Petitioners' conclusory allegations that he was threatened with punishment for prosecuting a civil rights action. The Court held that

> [t]hese allegations are totally inadequate for establishing the claimed denial of constitutional rights and defeating defendants' motion for summary judgment on this point, especially in light of the fact that defendants have both stated in their sworn affidavits that they never threatened plaintiff, either with respect to this action or at any other time. Furthermore, plaintiff's own litigious history in this court and instate court—more than a dozen petitions for habeas corpus in addition to other actions and petitions—belies his contention that his right of access to the Courts has been obstructed. *See Conway v. Oliver*, 429 F.2d 1307, 1308 (9th Cir.1970); *Wilson v. Prasse*, 404 F.2d 1380, 1381 (3d Cir.1968). Accordingly, defendants' motion for summary judgment with respect to this claim will be granted.

*Lingo v. Boone*, 402 F.Supp. at 775–76.

Therefore, summary judgment is appropriate in favor of Defendants on the second *Turner* factor.

3. Impact of accommodation of asserted constitutional right on guards and other inmates and on allocation of prison resources generally.

Inmates' right of access to Courts must be protected. *See Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); *see, Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) (Stevens, J. dissenting). Defendants assert that their reassignment of Plaintiffs from their law clerk positions, was in recognition of Defendants' obligation to maximize the access ability of all inmates.

Institutional staff, including Defendant Merritt, swear that they had received a number of complaints from inmates that Plaintiffs were charging for their law clerking services. Defendants' reassignment action was an effort to eliminate a potential obstruction to the access rights of the general prison population. Since other law clerks were available at PCI, against whom no complaints of charging had been raised, the general population had reasonable alternative means for meaningful access to Courts after Plaintiffs' reassignment.

Plaintiffs were later transferred to UCI where they had access to a major law library facility, in response to a request from the law librarian at Avon Park Correctional Institution. This transfer satisfied Plaintiffs' much greater-than-average need for legal materials and reduced the cost for providing such services to the Department. The library staff at Avon Park Correctional Institution had been shouldering the cost and time burden of satisfying Plaintiffs' requests for materials which were unavailable at the minor law library facility at PCI. The request totalled some 2000 pages of material. *See Adams v. James*, 784 F.2d at 1079.

Therefore, summary judgment in favor of Defendants is appropriate on the third *Turner* factor. Accordingly, it is

ORDERED:

1. That Defendants' motion for summary judgment is granted. (Doc. No. 135). The Clerk is directed to enter a judgment in favor of Defendants and against Plaintiffs.

2. That all other pending motions are denied as moot.

DONE AND ORDERED.