**Jeffrey RASKE, Plaintiff,**

v.

**Richard L. DUGGER, et al., Defendants.**

**No. 90–174–Civ–T–17C.**

United States District Court,
M.D. Florida,
Tampa Division.

April 20, 1993.

Jeffrey Raske, pro se.

William Peter Martin and Elaine D. Hall, Atty. General's Office, Dept. of Legal Affairs, Tallahassee, FL, for defendants.

## *ORDER*

KOVACHEVICH, District Judge.

This case is before the Court upon Defendants'[1] motion for summary judgment filed August 31, 1992 (Docket No. 78); Plaintiff's motion to extend time to file response to Defendants' motion for summary judgment, filed October 5, 1992 (Docket No. 79)[2]; Plaintiff's motion for partial summary judgment, filed October 7, 1992 (Docket No. 81); and Plaintiff's motion for entry of default, filed October 7, 1992 (Docket No. 81). After careful review, this Court grants Defendants' motion for summary judgment in part and denies Plaintiff's motion for entry of default[3]. Plaintiff's motion for partial summary judgment is deferred for future resolution pending Defendants' reply.

## I. BACKGROUND.

Plaintiff Jeffrey Raske, pro se, was incarcerated[4] in the Avon Park Correctional Institution ("APCI"), in Avon Park, Florida and, subsequently, in the Tampa Community Correctional Center ("TCCC") in Tampa, Florida from June 1983 to February 1990. In 1987, Plaintiff filed a pro se petition for writ of habeas corpus in the United States District Court for the Middle District of Florida, *Raske v. Martinez*, No. 87–779–CIV–ORL–18 (M.D.Fla.1987), challenging the constitutionality of the Correctional Reform Act of 1983, codified at Fla.Stat. § 944.-275 (1987) ("1983 Act"), as applied, in the award of gaintime credit. Prior to the 1983 Act, the statute, enacted in 1978 ("1978 Act"), provided that an inmate could earn a maximum incentive gaintime of thirty-seven days per month for labor performed. The 1983 Act limited this potential award to twenty days.

In January 1988, the District Court granted Plaintiff's petition and directed that the Florida Department of Corrections ("DOC")

apply the gaintime provided for in the 1978 Act which was in effect at the time Plaintiff committed the offense for which he was sentenced. The DOC appealed the decision of the District Court to the Court of Appeals for the Eleventh Circuit. On July 11, 1989, the Appellate Court affirmed the decision of the District Court in *Raske v. Martinez*, 876 F.2d 1496 (11th Cir.1989), *cert. denied*, 493 U.S. 993, 110 S.Ct. 543, 107 L.Ed.2d 540 (1989).

During the pendency of Plaintiff's case, another inmate, Donald Waldrup, filed a pro se petition for writ of habeas corpus in the Supreme Court of Florida. Waldrup's claim for relief was based upon the District Court's decision in Plaintiff's case. Thus, the DOC used the Waldrup case to seek Florida Supreme Court validation of the decision in Plaintiff's case. On February 22, 1991, the Florida Supreme Court, in *Waldrup v. Dugger*, 562 So.2d 687 (Fla.1990), determined that inmates whose offense dates fell within the period from July 1, 1978, to June 14, 1983, could be awarded basic gaintime under the 1983 Act but were required to be awarded incentive gaintime under the 1978 Act.

During the course of the appeals in Plaintiff's case and the pendency of the Waldrup case, the DOC adopted a pro-rata conversion of Plaintiff's incentive gaintime for the period between June 15, 1983, and May 19, 1988. This pro-rata method was proposed by Plaintiff in his petition to the District Court. The pro-rata method was necessary because Plaintiff's inmate records only contained data that was necessary to permit gaintime to be calculated under the 1983 Act. These inmate records did not contain the documentation necessary that would have allowed the DOC to make an assessment of the gaintime that should have been awarded between 1978 and 1983 pursuant to the 1978 Act. Because of the pendency of appeals and the inability of

---

1. Defendant McClure was never served in this action (See Docket No. 11).

2. Plaintiff's Response to Defendant's Motion for Summary Judgment (Docket No. 80) was filed on October 7, 1992. Therefore, Plaintiff's motion to extend time is moot.

3. Defendants filed a motion for summary judgment on August 31, 1992 (Docket No. 79). Therefore, Defendants had responded to Plaintiff's Complaint, although not in the form of an answer.

4. Plaintiff was then serving three consecutive twenty-five year sentences for crimes that occurred in 1982.

the DOC's automated data base to maintain 1978 Act awards, dual records were kept whereby DOC could calculate gaintime under both statutes.

On February 15, 1990, Plaintiff was released to supervised community release. Plaintiff was ultimately discharged from supervision and completed his sentence on April 1, 1990.

## II. FACTS OF THE CASE.

On February 15, 1990, Plaintiff filed this complaint (Docket No. 1) (the "Complaint") alleging primarily a civil rights violation pursuant to 42 U.S.C. § 1983 against twenty-four defendants in their individual and official capacities. Plaintiff asserts that through various acts and omissions, Defendants denied his constitutional rights of access to the court, due process, and equal protection guaranteed by the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. Additionally, Plaintiff alleges that Defendants violated the state law of negligence, Chapter 944, Chapter 945 and § 27.315 [5] of the Florida Statutes. Plaintiff seeks declaratory, compensatory, and punitive damages. All Defendants in this case, at all time relevant, were employees of the DOC with the exception of two who were employees of the Department of Legal Affairs of the Attorney General's Office. This Court has set out each party's contentions below.

### A. *Plaintiff's Contentions.*

Generally, Plaintiff asserts that Defendants conspired to harass and retaliate against him in order to deprive him of the full amount of gaintime he should have been awarded. Specifically, Plaintiff alleges that Defendant Padgett directed Defendant McClure to issue a disciplinary report against Plaintiff on January 26, 1988. Plaintiff alleges that this report caused his gaintime to be shortened. However, Plaintiff states in his complaint that this report was subsequently dismissed.

Additionally, Plaintiff makes several allegations concerning Defendants' failure to respond to his grievances and Defendants' denial of his grievances. Plaintiff contends that on January 31, 1988, Plaintiff filed an inmate grievance to Defendant Sawyer regarding the rules and policy of access to the law library to which he received no response. On February 3, 1988, Plaintiff asserts that he filed a second grievance to Defendant Sawyer. Plaintiff alleges that he received a response from Sawyer denying his grievance reasoning that Plaintiff "does not wish to get along."

Plaintiff also alleges that he was denied another grievance concerning the policy of access to the law library directed to Defendant Snover. In addition, Plaintiff maintains that he wrote a letter to Defendant Dugger, then Secretary of the DOC, and that Dugger failed to respond to the letter.

Plaintiff maintains that his constitutional rights were violated when Defendants Maher and Redd wrote Plaintiff and explained the procedure used to calculate his gaintime. Plaintiff asserts that Maher and Redd told him that dual gaintime records would be maintained during the time the habeas action was on appeal, in accordance with Plaintiff's suggested method of calculating gaintime. Plaintiff alleges that the dual records have been maintained after the appeal and that his gaintime was calculated in a manner contrary to the rules of the Department of Corrections. Consequently, Plaintiff asserts that he was awarded only a partial amount of the gaintime that he was entitled to be awarded.

Plaintiff claims that on November 16, 1988, he wrote a letter to Defendant Maher outlining the method by which his gaintime should be calculated. Plaintiff maintains that he received no response to his letter and, thus, his Eighth Amendment right against cruel and unusual punishment and Fourteenth Amendment right to due process and equal protection were violated.

Additionally, Plaintiff asserts that Defendant Albritton approved a job change for Plaintiff in order to conform to the DOC's gaintime awards criteria. However, Plaintiff claims that the job change never materialized. Plaintiff further claims that his Eighth and Fourteenth Amendment constitutional

**5.** Section 27.315, Florida Statutes, was not found.

rights were violated when Defendant Albritton explained how gaintime is calculated when an inmate attends a college program for a half day. Allegedly, Plaintiff responded to Defendant Albritton's letter which in turn was responded to by Defendant Hendrickson. Plaintiff alleges that Defendant Hendrickson's reply was in an "evasive manner" and also deferred the matter to Defendant Maher.

Plaintiff claims that Defendants Padgett, Watson, Maher and Olive violated his constitutional rights of due process, equal protection, and access to the courts when they informed him that he was not allowed to serve federal subpoenas on behalf of another inmate.

Allegations against Defendants Hendrickson, Aurbeck, Pass, Cumber and Gaskins were also asserted by the Plaintiff. Plaintiff claims that his request for transfer to a work release center was denied by Defendant Hendrickson based on the computer expiration of sentence date. Plaintiff maintains that Defendants Pass and Cumber violated his constitutional rights by denying Plaintiff the right to participate in the Supervised Community Release Program ("SCRAP") after he was told that "there would be no problems." Plaintiff alleges that Defendant Gaskins denied Plaintiff's request for a furlough for the purpose of finding suitable living quarters upon release. Plaintiff asserts that Defendant Aurbeck denied Plaintiff a visit from a minister on June 8, 1989, and a visit from a friend on June 12, 1989.

Plaintiff further contends that his First, Fifth and Fourteenth Amendment rights were violated when Defendant Dugger "deliberately ignored" a court order to show cause in a federal habeas corpus action filed by Plaintiff.

In addition, Plaintiff makes three separate allegations against Defendants Norris and Harper. Plaintiff contends that he failed to meet a required court deadline for filing documents because Defendant Norris refused to allow Plaintiff access to the law library. Second, Plaintiff contends that his constitutional rights were violated when Defendant Harper refused to notarize certain legal documents resulting in Plaintiff's miss-

ing a second court deadline. Third, Plaintiff contends that he missed another court deadline because Defendant Harper failed to properly mail certain documents and call for the pickup of these documents.

Plaintiff claims that on January 5, 1989, he filed a formal grievance regarding the allegedly gross negligence of Defendant Harper in the above stated matters. Plaintiff contends that in response, Defendant Prevatt answered the grievance with a "completely different set of facts from those presented" and denied the grievance on January 10, 1989. Plaintiff asserts that on January 16, 1989, an appeal was taken to Defendant Snover. The appeal was denied on January 26, 1989.

In Plaintiff's Ninth Cause of Action, he claims that Defendants violated "the state law of negligence," Chapters 944 and 945 of the Florida Statutes, and Florida Statute § 27.315 as it relates to the responsibilities of the Department of Corrections and its employees.

On March 14, 1989, Plaintiff claims he was transferred from APCI to TCCC; however, Plaintiff contends that he arrived at TCCC on March 23, 1989, only after an eight day trip that included transfers to South Florida Reception Center and North Florida Reception Center before arriving at TCCC. Plaintiff further asserts that Defendants Aurbeck and Gentkowski made "numerous threats of retaliatory transfer" when he persisted in requesting to go to the library for legal purposes during his first few months at TCCC.

On July 25, 1989, Plaintiff claims he spoke with Defendant Griffin about transfer to work release status for which he would allegedly be eligible for on August 1, 1989. Subsequently, Plaintiff claims that the request was denied.

Plaintiff further asserts that between January 30, 1990, and February 7, 1990, Defendant Gaskins made numerous comments about holding Plaintiff "until he feels like releasing him."

## B. *Defendants' Contentions.*

Defendants claim that Plaintiff's assertions are frivolous and fail to state any claim that Plaintiff's constitutional rights were violated. Further, Defendants contend that Plaintiff's assertions are vague and conclusory and fail to state a claim under 42 U.S.C. § 1983.

Specifically, Defendants contend that if the disciplinary report issued by Defendants Padgett and McClure was subsequently dismissed, then no loss of gaintime resulted. Thus, he would not have suffered injury. In addition, Defendants contend that the fact that Plaintiff's grievances were denied or not answered does not support a constitutional claim. Defendants further contend that if Plaintiff was not satisfied with the responses he received, he had the right to appeal them pursuant to DOC rules.

Furthermore, Defendants maintain that Defendant Dugger's failure to respond to Plaintiff's letter does not provide a basis upon which Plaintiff can assert a violation of his constitutional rights. Defendants contend that Defendant Dugger, as the Secretary of the DOC, receives countless letters from inmates and cannot be expected to read and respond to each one of these letters.

Defendants assert that Plaintiff's allegation concerning Defendant Maher's calculations of Plaintiff's gaintime does not state a constitutional claim and is patently frivolous. Defendants allege that Defendant Maher simply informed Plaintiff of the fact that his gaintime records would be maintained in a particular way. Further, Defendants contend that Plaintiff's allegation lacks merit because the procedure implemented by Maher (dual gaintime records) was a method Plaintiff himself had suggested.

As to Plaintiff's second allegation against Defendant Maher regarding her alleged lack of response to Plaintiff's letters, Defendants assert this allegation is blatantly false. In support of this contention, Defendants cite to several letters written to Plaintiff from Defendant Maher dated April 15, 1988, June 21, 1988, July 27, 1988, and November 9, 1988.

Defendants contend that Plaintiff's allegations concerning the alleged job change which never materialized after being approved by Defendants Albritton and Strickland do not state facts sufficient to support a claim of conspiracy. Moreover, Defendants' contend that Plaintiff's other claim against Defendant Albritton concerning his response to Plaintiff's letter and Defendant Hendrickson's alleged evasive response is a "blatantly false" allegation.

Furthermore, Defendants claim that Plaintiff's allegations against Defendants Padgett, Watson, Maher, and Olive regarding his right to serve federal subpoenas on behalf of another inmate is moot. Defendants assert that Plaintiff has no standing to maintain such allegations because Plaintiff is not the injured party.

Defendants assert that Plaintiff's allegations against Defendants Hendrickson, Aurbeck, Griffin, Pass and Gaskins do not "square with the facts." Defendants claim that Plaintiff was told by Defendant Redd that his requests were being handled and monitored for eligibility.

Defendants contend that Plaintiff's assertion against Defendant Dugger concerning Defendant Dugger's failure to file a response to an order to show cause in a federal habeas corpus action filed by Plaintiff did not affect Plaintiff's constitutional rights. Defendants assert that even if it is assumed that no response was filed by Defendant Dugger, the issue should have been addressed at that habeas corpus proceeding.

Defendants assert that Plaintiff's complaints against Defendants Norris and Harper regarding the missed court deadlines are without merit. Defendants contend that Plaintiff has not suffered any injury, such as a dismissal or denial of relief, because of Defendants' action or inaction.

As to Plaintiff's Ninth Cause of Action concerning the state law of negligence, Defendants assert that Plaintiff has failed to state a claim in a civil rights action brought pursuant to 42 U.S.C. § 1983. Defendants further contend that a negligent act on behalf of an official does not rise to the level of a Due Process violation.

Defendants contend that the Plaintiff has failed to establish a causal connection between the acts of Defendants Dugger, Redd,

Snover, Prevatt, Sawyer, Bliel, Tompkins, Cumber, Dale, Gaskins, Maher, and Olive and their conduct which allegedly violated Plaintiff's constitutional rights. Defendants also claim that they are entitled to absolute immunity in their official capacities and qualified immunity from an award of damages.

## III. ANALYSIS.

### A. *Standard for Summary Judgment.*

Summary Judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Thus, summary judgment is appropriate where the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law governing the action determines whether an element is essential. *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553; *see Brown v. Crawford,* 906 F.2d 667, 669, *cert. denied,* —— U.S. ——, 111 S.Ct. 2056, 114 L.Ed.2d 461 (11th Cir.1991).

Although this circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable to the nonmoving party, *Sweat v. The Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983); *see also Matsushita Electric Industrial Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct.

1348, 89 L.Ed.2d 538 (1986), "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214. The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2514 (*citing Adickes v. S.H. Kress & CO.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)). Therefore, under this standard of review, the Court must determine whether the movant has met its burden of coming forward with proof of the absence of any genuine issue of material fact.

### B. *Gaintime Deprivation.*

■ The underlying issue in this case is whether Plaintiff Raske was denied any gaintime due to the allegations set forth in his complaint. As reiterated above, Plaintiff, throughout his complaint, cites specific instances of Defendants' conduct that allegedly support his contention that Defendants conspired to deprive him of the full amount of gaintime he should have been awarded. Defendants assert that Plaintiff's gaintime was properly calculated pursuant to the Court's order in the habeas action; that Plaintiff was awarded all the gaintime to which he was entitled; and that Plaintiff was ultimately released from incarceration on the correct date.

Plaintiff maintains that he was denied his full amount of gaintime because Defendants kept dual records during and after the pendency of the habeas corpus action. However, this vague assertion does not prove that Defendants were conspiring to deprive Plaintiff of gaintime. Moreover, there is nothing conspiratorial about keeping dual records, especially when the DOC has valid reasons for doing so.

After review of the record, this court has determined that dual records were maintained because DOC's data base was incapable of recording Plaintiff Raske's awards. Further, in order to avoid confusion and error, dual calculations were maintained in

the Central Office of the Department of Corrections by Defendant Redd, the Assistant Administrator for Admission and Release. Plaintiff Raske was informed that he should correspond with Defendant Redd regarding his gaintime calculations.

The fact that Defendant Redd was the only person assigned to maintain Plaintiff's records indicates that the DOC specifically sought to ensure that Plaintiff Raske's records would be accurately maintained. Furthermore, assigning Plaintiff's records to only one person mitigates Plaintiff's allegations regarding other Defendants' failure or inability to respond to his inquiries concerning his gaintime.

The District Court, in *Raske v. Martinez*, No. 87–779–CIV–ORL–18 (M.D.Fla.1987), ordered the DOC to apply the statute in effect at the time of Plaintiff's offense. Thus, Plaintiff was eligible to earn more gaintime credits than he would have been under the 1983 Act. However, Plaintiff's gaintime earned prior to the District Court's order was re-calculated using a pro-rata method which was proposed by Plaintiff himself. The pro-rata formula was a transitional tool. After the District Court's order, the DOC obtained the appropriate documentation, and the determination of Plaintiff's gaintime was based on the appropriate statutes and rules. Moreover, the fact that Plaintiff suggested that the pro-rata formula be used to convert his gaintime serves to mitigate Plaintiff's position.

█ Throughout Plaintiff's complaint, he makes general assertions regarding the manner in which certain Defendants answered his inquiries about gaintime. However, in one instance, Plaintiff provides evidence indicating that he is entitled to twenty-nine days of gaintime which the DOC refused to apply to his sentence. Plaintiff has produced a DOC document[6] in which the Plaintiff requests gaintime that apparently was not

credited to him. The reply, signed by Defendants Redd and Snover, dated July 28, 1988, indicates that Plaintiff's records were to be adjusted to show what appears to be twenty-seven days[7] of gaintime. This discrepancy is the basis for Plaintiff's motion for partial summary judgment.

Defendants have not filed a response to Plaintiff's motion for partial summary judgment. Therefore, this Court will not grant Defendants' motion for summary judgment on Plaintiff's Seventh Cause of Action and will defer ruling on Plaintiff's motion for partial summary judgment in order to provide the Defendants an opportunity to respond.

### C. Harassment and Retaliation.

█ Plaintiff complains that Defendants have conspired to harass and retaliate against him while referring to seventy-five instances of such conduct. Defendants assert that Plaintiff's allegations are vague and conclusory.

█ In civil rights and conspiracy actions, conclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint. *Kearson v. Southern Bell Tel. & Tel. Co.*, 763 F.2d 405, 407 (11th Cir.1985), *cert. denied*, 474 U.S. 1065, 106 S.Ct. 817, 88 L.Ed.2d 790 (1986). A defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed. *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir.1984). More than conclusory and vague allegations are required to state a cause of action under 42 U.S.C. § 1983. *Id.* at 556–57. The First Circuit stated:

In an effort to control frivolous conspiracy suits under 1983, federal courts have come to insist that the complaint state with specificity the facts that, in the plaintiff's mind, show the existence and scope of the

---

6. Composite Document 13 in Plaintiff's Response to Defendant's Motion for Summary Judgment (Docket No. 80) and Exhibit A in Plaintiff's Motion for Partial Summary Judgment (Docket No. 81).

7. Plaintiff, in his motions, indicates that the amount should be 29 days, but the document

states that "your records have been updated to reflect (sic) you received 6 days of gaintime for the months of May, June, July and August of 1984, and the award for September 1984, has been changed from 11 days to 14 days." Plaintiff's Response to Defendant's Motion for Summary Judgment, Composite Document 13.

alleged conspiracy. It has long been the law in this and other circuits that complaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts. *Dunn v. Gazzola*, 216 F.2d 709, 711 (1st Cir.1954); *Kadar Corp. v. Milbury*, 549 F.2d 230 (1st Cir.1977); *Fletcher v. Hook*, 446 F.2d 14 (3rd Cir.1971); *Johnson v. Stone*, 268 F.2d 803 (7th Cir.1959); *Ellingburg v. King*, 490 F.2d 1270 (8th Cir.1974); *Powell v. Jarvis*, 460 F.2d 551 (2d Cir.1972). This rule might have been applied with profit to this case. The complaint contains frequent references to conspiracy, but it offers few insights into the specific nature of the alleged concerted action. The only specific allegation regarding a conspiracy is the statement that the constable forged illegal documents and served them on the plaintiff at the request of the credit union's lawyer and with the knowledge of the court's clerk. Despite language hinting at a wider conspiracy, the plaintiff has failed to plead facts supporting these vague claims, and the courts need not conjure up unpleaded facts to support these conclusory suggestions. *O'Brien v. DiGrazia*, 544 F.2d 543, 546 n. 3 (1st Cir.1976).

*Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir.1977), *cert. denied*, 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978) (footnote omitted).

The Eleventh Circuit recently stated:

To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff "must show that the parties 'reached an understanding' to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy." *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2053, [114] L.Ed.2d 459 (1991).

.    .    .    .    .

[T]he linchpin for conspiracy is agreement, which presupposes communication. . . .

*Bailey v. Board of County Commissioners of Alachua County*, 956 F.2d 1112 (11th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992). Plaintiff has failed to provide any support for the allegations set forth in his complaint in regards to conspiracy among any Defendants.

Plaintiff complains that certain Defendants failed to respond to his grievances. Further, he complains that Defendants denied his grievances. However, such complaints do not form the basis of a conspiracy. Nor do such allegations support a finding of constitutional violations on the part of Defendants.

Moreover, Plaintiff contends that certain Defendants wrote Disciplinary Reports against him. However, Plaintiff also contends that these reports were subsequently dismissed. This court fails to see how these claims are anything but conclusory.

Throughout his complaint, Plaintiff refers to numerous situations in which he received responses to his letters from certain Defendants. For example, Plaintiff refers to a response from Defendant Maher concerning the method by which his gaintime records would be maintained. However, such allegations do not state with sufficient specificity the grievance for which Plaintiff seeks relief. From the face of such allegations, this court can only assume that Plaintiff was dissatisfied with Defendants' responses. Such dissatisfaction does not form the basis of a cause of action for conspiracy or constitutional infringement.

Plaintiff's allegations in the instant case do not set forth specific instances of conduct demonstrating conspiracy or retaliatory harassment on behalf of Defendants. Nor do Plaintiff's assertions form the basis for any constitutional violations. Rather, Plaintiff's allegations are vague and conclusory.

Finally, Plaintiff alleges that Defendant Dugger failed to answer an order to show cause in another proceeding. Plaintiff does not set forth any allegations of how this omission violated his First, Fifth, or Fourteenth Amendment rights as charged in Plaintiff's Third Cause of Action.

**D.  *Denial of Access to Court.***

■ In *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977),· the Supreme Court held that prisoners were entitled to "a reasonably adequate

opportunity to present claimed violations of fundamental constitutional rights to the courts." Many circuits have understood *Bounds* to require some showing of prejudice or injury to support such a claim. *Chandler v. Baird*, 926 F.2d 1057, 1062 (11th Cir.1991). However, the *Chandler* court stated further that:

> We resist making any sweeping declaration concerning the need for a prison inmate to establish prejudice arising out of alleged restrictions of his access to courts. In some cases, the prejudice inheres in the specific facts.... But the instant case is of the genre at the minimal end of the deprivation spectrum. That is to say that the alleged deprivations are of a minor and short-lived nature and do not implicate general policies. In such a case, we think both policy and the prevailing state of the law require an inmate to articulate facts indicating some prejudice such as being unable to do timely research on a legal problem or being procedurally or substantively disadvantaged in the prosecution of a cause of action.

*Id.* at 1063.

In the instant case, Plaintiff asserts that he failed to meet court deadlines in four instances due to the actions of certain Defendants. First, Plaintiff claims that Defendant Norris refused to allow Plaintiff to go to the law library resulting in his failure to meet a court deadline. Second, Plaintiff asserts that Defendant Harper caused him to miss a deadline when Harper allegedly refused to notarize a certain legal document. Third, Plaintiff asserts that Defendant Padgett denied Plaintiff his right to serve federal subpoenas for other inmates. Fourth, Plaintiff alleges Defendant Harper failed to mail documents via Federal Express which resulted in another missed court deadline.

Although Plaintiff alleges that he failed to meet required deadlines, he offers no specific evidence that would indicate that he was procedurally or substantively disadvantaged in those proceedings. For example, Plaintiff could have alleged that he suffered dismissal or denial of relief due to his failure to meet the court deadlines. However, there is no evidence of such injury or prejudice. Plaintiff has failed to prove any injury as a result of any of the foregoing alleged incidents, whether they be harassment, retaliation or missed court deadlines.

### E. *Negligence.*

█ Plaintiff, in his Ninth Cause of Action, makes broad allegations of state law violations. Plaintiff alleges "that the defendants violated the state law of negligence, Chapters 944 and 945 of the Florida Statutes, and Florida Statutes § 27.315 [8], as it relates to the responsibilities of the DOC and its employees." The Plaintiff does not state what duties under Chapters 944 and 945 where breached nor does he allege any causation.

This court must make the assumption that Plaintiff has alleged negligence as a civil rights violation under 42 U.S.C. § 1983. The Supreme Court in *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), stated that the Due Process Clause is not implicated by the negligent act of an official. Under this Court's standard for summary judgment, there is no genuine issue as to any material fact which, when viewed in a light most favorable to the nonmovant, will enable this allegation to survive Defendants' summary judgment motion.

### F. *Declaratory Relief.*

█ Article III of the Constitution sets forth that those who seek to invoke the power of federal courts must allege an actual case or controversy. This requirement is met by showing present exposure to illegal conduct. Past exposure of illegal conduct does not demonstrate the presence of a case or controversy. *O'Shea v. Littleton*, 414 U.S. 488, 495–96, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974). Thus, once an inmate has been transferred, his claim for declaratory relief in a section 1983 action fails to present a case or controversy. *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir.1985).

Plaintiff was released from the custody of the DOC and transferred to supervised community release on February 15, 1990. Plain-

8. See footnote 5, supra.

tiff was discharged from supervision on April 1, 1990. Therefore, Plaintiff was completely released from custody over three years ago. Consequently, Plaintiff's allegations do not meet the case or controversy requirement and Plaintiff's claims seeking declaratory relief are moot.

## IV. CONCLUSION

Summary judgment is granted in favor of Defendants as to Plaintiff's First, Second, Third, Fourth, Fifth, Sixth and Ninth Cause of Action.[9] Therefore, for the foregoing reasons, it is **ORDERED:**

1. that Defendants' Motion for Summary Judgment (Docket No. 78) be **GRANTED IN PART;**

2. that Plaintiff's Motion to extend time to file response to Defendants' Motion for Summary Judgment (Docket No. 79) be **DENIED** as moot;

3. that Plaintiff's Motion for Partial Summary Judgment (Docket No. 81) be **DEFERRED;**

4. that Defendants respond within ten days to Plaintiff's Motion for Partial Summary Judgment (Docket No. 81);

5. that Plaintiff's Motion for Entry of Default (Docket No. 82) be **DENIED.**

**DONE AND ORDERED.**

---

9. There is no Eighth Cause of Action in Plaintiff's    Complaint.