IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 2, 2001

## JON D. HALL v. BILL MCLESKY, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 99-1281-II     Carol L. McCoy, Chancellor**

_____

**No. M2000-01857-COA-R3-CV - Filed November 21, 2001**

_____

A death row inmate filed a Petition for Declaratory Judgment, claiming that employees of the Department of Correction had caused his attorney's phone number to be removed from an approved calling list, and had refused to restore the number to the list in a timely way. The inmate named seven employees of the Department and a private telephone company as defendants, and demanded monetary damages. The trial court dismissed the action, because the petitioner failed to comply with the mandatory requirements of the Uniform Administrative Procedures Act. Because we do not believe the petitioner was entitled to relief under any of the theories he advanced, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

Jon D. Hall, Nashville, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Mark A. Hudson, Senior Counsel, for the appellees, Bill McLesky, Howard Brandon, Robert Waller, Ricky Bell, Charles Tracey, Sharon Johnson, Jim Rose, Opus Correctional, LLC.

### OPINION

### I. A PRISONER'S GRIEVANCE

Jon D. Hall was convicted of first-degree murder, and sentenced to death for the 1994 strangulation and drowning of his wife. During his confinement at Riverbend Maximum Security Institution (RMSI) in Nashville, Mr. Hall filed a federal lawsuit against the two attorneys who had defended him at trial, and who represented him before the Court of Criminal Appeals. On April 2,

1998, the Court relieved the two attorneys of any further representation of Mr. Hall and appointed Jackson attorney Mark Donahoe to represent him in his appeal to the Supreme Court.

According to Mr. Hall's petition, Mr. Donahoe was placed on his attorney calling list shortly thereafter, and the inmate made at least fifteen collect calls to his attorney between April of 1998 and February of 1999. On February 24, 1999, Mr. Hall received a notice advising him that the State had been unable to validate Mr. Donahoe's phone number, and that the number had been blocked from the inmate's caller list. The signature of Sergeant Bill McLesky was on the notice. Mr. Hall promptly filed an emergency grievance, alleging that Sergeant McLesky had wrongfully removed Mr. Donahoe's number from the list, and demanding that it be restored immediately.

The procedures for filing inmate grievances are outlined in Index #501.01 of the Policies and Procedures of the Department of Correction, and detailed in a handbook made available to inmates. These procedures include three levels of possible review, each of which is to be conducted according to strict time limits, so that grievances may be resolved promptly. There is also a provision for emergency grievances, which are expedited in situations where the normal time limits "could cause the grievant substantial risk of personal injury or irreparable harm." Index #501.01(IV)(C).

Apparently, the authorities did not treat Mr. Hall's grievance as an emergency. On March 1, Deputy Warden Robert Waller filed a Level I response to the grievance. It stated that Sergeant McLesky had not blocked the number, but that the Department of Correction had asked Opus Telecom, which furnishes telephone services to the Department, to verify all attorney numbers, and that Opus had unsuccessfully attempted to reach Mr. Donahoe for verification. Warden Waller's response also stated that Mr. Donahoe's calls would remain blocked until the attorney sent the warden a letter or fax stating that he would accept calls from Mr. Hall. On March 9, 1999, grievance committee chairperson Howard Brandon concurred with Mr. Waller's response.

Mr. Hall then invoked the provisions for a Second Level Review by appealing to the grievance committee and the warden. The committee conducted a hearing on March 17, and subsequently filed a concurrence with the previous determination, which was signed by five committee members and by Warden Ricky Bell. Finally, Mr. Hall exercised his right to a Third Level Review by appealing to Assistant Commissioner Jim Rose. Mr. Rose denied the appeal on March 31, 1999.

## II. PROCEEDINGS IN THE TRIAL COURT

On May 4, 1999, Mr. Hall filed a Suit for Declaratory Judgment in the Chancery Court of Davidson County. The named defendants were Sergeant McLesky, Howard Brandon, grievance committee members Charles Tracey and Sharon Johnson, Wardens Waller and Bell, Commissioner Rose, and Opus Correctional Incorporation (sic). Mr. Hall faulted the defendant correctional employees for removing Mr. Donahoe's number from his calling list, for not treating his grievance as an emergency, and for not restoring the number to the list during the grievance process.

The prisoner contended that the actions of the defendants had deprived him of his constitutional right to assistance of counsel. He noted that he was in the middle of an automatic direct appeal of his death sentence to the Tennessee Supreme Court, with oral argument set for June 2, 1999. Mr. Hall alleged that during the phone blockage, he had become aware of a case that furnished an argument for a possible reversal of his sentence on the ground of an erroneous jury instruction on intoxication and diminished capacity, and implied that as a result of the breakdown in communication, a supplemental brief prepared by Mr. Donahoe and filed in the Supreme Court on March 22, did not include anything about the allegedly erroneous jury instruction.[1]

Mr. Hall further stated that he sent a certified, return receipt letter to Mr. Donahoe's office on March 24, 1999, detailing his phone problems and the jury instruction argument. Mr. Donahoe apparently received the letter, and allegedly told Mr. Hall's mother that he had already sent a letter to the warden to correct the phone problem. But Mr. Hall claimed that he was still unable to contact his attorney during his last attempt on April 30, 1999. The petitioner asked the trial court to issue an emergency restraining order to the Department to unblock his attorney's number, and to award him compensatory damages of $2,000, and punitive damages of $25,000.

The State responded to Mr. Halls's suit by filing a Motion to Dismiss on behalf of the seven departmental employees. The grounds asserted were the trial court's lack of jurisdiction, the personal immunity of the individual defendants, and the plaintiff's failure to state a claim upon which relief can be granted. *See* Rule 12.02(6), Tenn. R. Civ. P.

Opus Correctional LLC filed its own answer to the suit, asserting as affirmative defenses that the company was not properly served, that Mr. Hall did not suffer any harm as a result of any actions by Opus, and that there were no allegations of wrongdoing by Opus in the suit.

Mr. Hall filed a response to the State's motion on July 6, 1999, followed by several motions of his own. In his response, he argued that the correctional defendants were not entitled to immunity because their conduct amounted to gross negligence or actionable criminal behavior. He also characterized his suit for the first time as a 42 U.S.C. § 1983 claim for deprivation of civil rights. Mr. Hall reiterated his claims for monetary damages, noting that the defendants had since placed the phone number in question back on his caller list, but complaining that the action was "too little, too late." These same points were incorporated into Mr. Hall's motion to amend his complaint.

The trial court filed a Memorandum and Order on October 7, 1999, granting the plaintiff's Motion to Amend, but dismissing his suit for failure to follow the requirements for a Declaratory Judgment action found in the Uniform Administrative Procedures Act (UAPA). Mr. Hall then filed several post-judgment motions, including a Motion to Vacate or Amend the Memorandum and Order, accompanied by his affidavit, which alleged that Mr. Donahoe's name was removed from his

---

[1] The Supreme Court's opinion in *State v. Hall*, 8 S.W.3d 593 (Tenn. 1999), filed on November 15, 1999, does not address the case cited by Mr. Hall, or the challenged jury instruction. It does, however, discuss and reject the alleged factual predicate behind his argument of diminished capacity.

phone list as a retaliation for his role in circulating a petition among death row inmates, protesting against the unreliability of the phone service provided to them. The trial court denied the motion, filing its final order in this case on May 26, 2000. This appeal followed.

## III. DECLARATORY JUDGMENT

Two different sections of the Tennessee Code deal with declaratory judgments. The general statutes, found at Tenn. Code. Ann. § 29-14-101, et seq. announce that courts of record have the power to "declare rights, status and other legal relations, whether or not further relief is or could be claimed." Tenn. Code. Ann. § 29-14-102. We note, however, that the courts of Tennessee are prohibited from entertaining an action for declaratory judgment against a state officer under this statute. *Carter v. McWherter*, 859 S.W.2d 343 (Tenn. Ct. App. 1993). It therefore was proper for the trial court to construe Mr. Hall's suit as a Petition for Declaratory Judgment under the UAPA, Tenn. Code Ann. § 4-5-201, et seq.

Tenn. Code. Ann. § 4-5-225 of the UAPA makes it possible for an individual who is aggrieved by the action of a state agency to obtain relief from the courts if he follows the steps outlined in the Act. Tenn. Code Ann. § 4-5-225 reads, in pertinent part,

> (a) The legal validity or applicability of a statute, rule or order of an agency to specified circumstances may be determined in a suit for a declaratory judgment in the chancery court of Davidson County, unless otherwise specifically provided by statute, if the court finds that the statute, rule or order, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the complainant. The agency shall be made a party to the suit.

> (b) A declaratory judgment shall not be rendered concerning the validity or applicability of a statute, rule or order unless the complainant has petitioned the agency for a declaratory order and the agency has refused to issue a declaratory order.

The court observed that Mr. Hall had not complied with the basic requirements of the above statute, rendering it unable to consider the merits of his petition. For one thing, Mr. Hall did not name any agency as a party to the suit. Neither the Department of Correction nor the grievance committee were named as defendants, but only a number of departmental employees and a telecommunications subcontractor.

More importantly, there is no indication in the record that Mr. Hall had ever petitioned the Department for a Declaratory Order, despite the requirements of Tenn. Code Ann. § 4-5-225(b). The court therefore determined that it did not have jurisdiction over Mr. Hall's claim, and concluded that its only choice was to dismiss his petition. The trial court's conclusion is consistent with this court's prior ruling in *Watson v. Tennessee Department of Correction*, 970 S.W.2d 494 (Tenn. Ct. App. 1998).

## IV. WRIT OF CERTIORARI

In his appellate brief,[2] Mr. Hall does not address the question of jurisdiction under the UAPA. He argues, rather, that as a layman unskilled in the law, he incorrectly designated his suit as one for declaratory judgment. He contends that in accordance with the Supreme Court's opinion in *McAllen v. City of Memphis*, 786 S.W.2d 633 (Tenn. 1990), the trial court had the power to treat it as a Petition for Writ of Certiorari, and that the court therefore was obligated to do so.

The *McAllen* case is not really on point, and insofar as Mr. Hall's complaint was directed against individual defendants and a private company, rather than a governmental administrative or quasi-judicial body, it did not name any party with the power to grant him the relief he sought. Nonetheless, we will examine Mr. Hall's claim to determine whether the allegations contained in it would have entitled him to prevail under the common law writ of certiorari.

A writ of certiorari is an order from a superior court to an inferior tribunal to send up a complete record for review, so that the court can determine whether that tribunal has exceeded its jurisdiction, or has acted illegally, fraudulently or arbitrarily. *Yokley v. State*, 632 S.W.2d 123, 126 (Tenn. Ct. App. 1981). The writ is not available as a matter of right; its grant or denial is within the sound discretion of the trial court, and will not be reversed on appeal unless there is abuse of that discretion. *Boyce v. Williams*, 389 S.W.2d 272, 277 (Tenn. 1965).

Further, the scope of review under the common law writ of certiorari is very narrow. It does not involve an inquiry into the intrinsic correctness of the decision of the tribunal below, but only into the manner in which the decision was reached. *Powell v. Parole Eligibility Review Board*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994).

Keeping these principles in mind, it does not appear to us that in exercising their authority, the grievance committee and the individuals involved in the grievance process deviated from the normal grievance procedures set out in Index #501.01, including the time frame for each step in the process. Mr. Hall argues that their failure to follow the emergency grievance procedure was a grave violation of his rights. But while it is at least arguable that his status as a death row inmate triggers a right to the emergency procedures because of "substantial risk of personal injury or irreparable harm," it does not appear to us that the circumstances he described were so severe as to deprive the committee and its members of the discretion to determine whether or not his grievance should be considered an emergency.

The removal of Mr. Donahoe's name from the appellant's phone list came about because of a new screening procedure, and because Mr. Donahoe could not be reached by telephone in accordance with that procedure. Despite Mr. Hall's argument to the contrary, there is no evidence

---

[2] Mr. Hall did not file a timely brief, and this court ordered him to show cause why his appeal should not be dismissed for failure to file one. The appellant then filed an "Ex-Parte Motion to Show Cause," which this court deemed to be his brief for purposes of this appeal.

that the policy was directed against him personally. Further, the decision did not eliminate all channels of communication between Mr. Hall and his attorney. He was still able to use the mail, and to contact Mr. Donahoe through his mother, who apparently remained on the phone list. Finally, the committee provided a means to restore direct contact between Mr. Hall and his attorney. Though it took a while for that contact to be re-established, the delay cannot be attributed to the grievance committee.

In sum, it does not appear to us that Mr. Hall's allegations concerning the actions of the grievance committee and its members amount to a claim entitling him to the common law writ of certiorari. He does not allege facts that would support a decision to issue the writ (arbitrary, illegal, or action in excess of jurisdiction). Therefore, even if the trial court had deemed his suit to be a Petition for Writ of Certiorari, and ignored his failure to name a proper party, Mr. Hall still would not have been entitled to the writ.

## V.  42 U.S.C. § 1983

Even if Mr. Hall had avoided the procedural hurdles associated with the UAPA by filing a civil rights suit of the kind which is authorized by 42 U.S.C. § 1983, we still do not believe the facts he alleged would have entitled him to the relief he sought.

42 U.S.C. § 1983 reads in pertinent part,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Numerous opinions dealing with claims under this federal statute have reiterated the constitutional rights of prisoners to have meaningful access to the courts. *Bounds v. Smith,* 430 U.S. 817 (1977); *McDonald v. Hall*, 610 F.2d 16 (1st Circuit 1979); *Boston v. Stanton*, 450 F. Supp. 1049 (D.C. Mo. 1978). This right often includes the assistance of, and access to, legal counsel. *Dreher v. Sielaff*, 636 F.2d 1141 (7th Circuit 1980); *Via v. Cliff*, 470 F.2d 271 (3rd Circuit 1972).

However, the constitution only requires that prisoners have reasonable access to the courts, and their rights must be balanced against the legitimate regulatory needs of prison administration. *Wolff v. McDonnell*, 418 U.S. 539 (1974); Harrell *v. Keohane*, 621 F.2d 1059 (10th Circuit 1980). Also, in order to prevail on a claim that he was denied meaningful access to the courts, a prisoner must present sufficient evidence that he was prejudiced by the alleged deprivation. *Cooper v. Delo*, 997 F.2d 376 (8th Circuit 1993); *Raske v. Dugger*, 819 F. Supp. 1046 (M.D. Fla. 1993).

The federal courts have had a few opportunities to deal specifically with the question of restrictions placed upon telephone communications between attorneys and prisoners. In *Williams v. ICC Committee*, 812 F. Supp. 1029 (N.D. Cal. 1992), for example, the court said that an inmate could state a claim only if he could demonstrate that the phone was his only avenue for meaningful access to his lawyer because he was unable to contact the lawyer by mail, or was denied visits from his lawyer. In another case, *Bellamy v. McMickens*, 692 F. Supp. 205 (S.D. N.Y. 1988), the court ruled that a prisoner's civil rights were not violated simply because he could not telephone his attorney whenever he wanted, but was subject to delays imposed by prison regulations.

Mr. Hall did not assert sufficient facts to indicate that he was prejudiced by the temporary interruption of telephone service to his attorney, or that he could not enjoy meaningful contact with his attorney during the period when telephone service was interrupted. It appears that any restriction imposed upon his constitutional right to meaningful access to the courts was of limited scope and duration, and was related to a legitimate regulatory purpose on the part of prison administration. He therefore suffered no constitutional deprivation that would have been sufficient to invoke the protections of 42 U.S.C. § 1983.

## VI.

The order of the trial court is affirmed. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, Jon D. Hall.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.