Tony FOUNTAIN, # 152157, Plaintiff,

v.

Daniel R. TALLEY, et al., Defendants.

No. Civ. A. 94–C–676–N.

United States District Court,
M.D. Alabama,
Northern Division.

Feb. 25, 2000.

Tony Fountain, Elmore, AL, plaintiff pro se.

Craig T. Jones, Atlanta, GA, James Mendelsohn, Collins Law Firm, Birmingham, AL, for Tony Fountain, plaintiff.

Horace N. Lynn, Andrew W. Redd, Kim T. Thomas, Legal Div., Montgomery, AL, for Daniel R. Talley, Jesse Smith, James D. White, Donald Adair, Edward Robinson, Officer Fuller, Joe S. Hopper, Tommy Herring, defendants.

## *MEMORANDUM OPINION AND ORDER*

CARROLL, United States Magistrate Judge.

## I. INTRODUCTION AND PROCEDURAL HISTORY

On June 2, 1994, the plaintiff Tony Fountain filed this action, pro se, against several correctional officials and employees of the prison medical care provider alleging that his constitutional rights were violated when he was placed on the so-called "hitching post" for his alleged refusal to work. Proceedings in the case were stayed, de facto, awaiting a decision on the constitutionality of the use of the hitching post. On March 13, 1998, Fountain, through counsel, filed an amended complaint seeking the certification of a class. On August 18, 1998, United States District Judge Myron Thompson issued an opinion in a case styled *Austin v. Hopper,* 15 F.Supp.2d 1210 (M.D.Ala.1998), which, inter alia, declared that the manner in which the defendants used the hitching post was unconstitutional. The defendants then moved to dismiss the complaint in this case for failure to state a claim and on qualified immunity grounds. On September 15, 1998, the undersigned magistrate judge issued a recommendation that this case be dismissed without prejudice and with leave to amend. On October 19, 1998, United States District Judge W. Harold Albritton adopted the recommendation and granted Fountain leave to file the second amended complaint.[1] That same day Fountain filed a second amended complaint which also incorporates by reference the defendants named in his original pro se complaint.[2] An examination of the second amended complaint and the pro se complaint shows that the following persons are currently named as defendants:

1. Joseph Hopper, a former Commissioner of the Alabama Department of Corrections (DOC);

2. Tommy Herring, another former DOC Commissioner;

3. J.D. White, the warden of the Staton Correctional Facility on the day of the alleged constitutional violation.[3]

4. Lt. Jesse Smith, the Farm Supervisor;

5. Lt. Robinson;

6. Sergeant Adair;

7. Correctional Officer (CO) Daniel Talley; and

8. CO Fuller.

---

1. The parties have since consented to have the magistrate judge exercise case dispositive jurisdiction pursuant to the provisions of 28 U.S.C. § 636(c).

2. The second amended complaint specifically dismisses all claims against defendants Hen-ry, Shine, Dennis, Lane, Mendez, Vaughn and Hollons.

3. White is now deceased. No one has filed a suggestion of death and Fountain has not attempted to add White's estate as a defendant.

The case is currently pending before the court on a motion to dismiss filed by the defendants. For the reasons which follow, the court concludes that the motion is due to be granted in part and denied in part.

## II. FACTUAL BACKGROUND [4]

On October 6, 1993, the DOC adopted Administrative Regulation Number 429 which authorized the use of a "restraining bar" now known as the "hitching post" to punish someone who refuses to work or is otherwise disruptive to the work squad.[5] The hitching post is described in the regulation as a horizontal bar made of sturdy, nonflexible material "placed at 57 inches and 45 inches from the ground so as to accommodate inmates of varying heights." [6] The regulation also provides certain protections for inmates placed on the hitching post. Regulation 429 requires that the corrections officer who places the inmate on the hitching post contact the health care unit "to ensure that [the inmate] does not have medical stop-up restricting him from work." The regulation also requires that the inmate be given the opportunity to go to the bathroom once each hour.[7] At the time of the incident which is the subject of this complaint, Fountain was an inmate housed at the Staton Correctional Facility in Elmore County. He was suffering with a back problem which caused him severe pain in both his back and his legs. Despite his medical condition, he was assigned to work on a farm squad.

On May 2, 1994, the plaintiff went out with his farm squad but was unable to keep up. His physical difficulties were observed by Correctional Officer Daniel Talley, who was the officer in charge of Fountain's farm squad. Fountain explained to Talley that he could not keep up with the squad because of severe leg pains. He also told Talley that he had been up all night at sick call until 4:30 that morning and that he had been given a laxative by the prison medical staff.[8]

After hearing Fountain's explanation, Talley called Lt. Smith on the radio to request that Fountain be placed on the hitching post. At this point in time, the farm squad had not yet left the prison grounds to travel to the work site. After receiving the call from Talley, Smith came to the back gate to talk to Fountain. Fountain told him the same things about his medical condition that he had just told Talley. Smith told Fountain to walk with him, which he was only able to do with great difficulty. Smith walked Fountain to the hitching post and shackled him to it. Fountain was placed on the hitching post at the direct order of J.D. White, the warden of the facility. According to the allegations of Fountain's complaint, at the time White ordered Fountain's placement on the hitching post, White either knew about Fountain's medical condition or refused to give Fountain an opportunity to tell his story.[9]

At Staton, there were two hitching posts—a lower one and a higher one which was designed for taller inmates. Fountain, as an inmate who is six feet tall, should have been placed on the higher bar. Although both bars were available, Smith intentionally placed Fountain on the lower bar which caused him to bend over in a painful position.[10]

At approximately 9:45 A.M., Sergeant Adair came to the back gate and saw Fountain bent over the lower rail of the hitching post writhing in pain. Fountain told Adair that he had a bad back and was

---

4. This recitation of facts is taken from the plaintiff's complaint. At this stage of the proceedings, the court must accept the facts as pled by the plaintiff as true. *Williams v. Alabama State University,* 102 F.3d 1179, 1182 (11th Cir.1997)

5. *Austin v. Hopper,* 15 F.Supp.2d at 1240–44.

6. *Id.* at p. 1241.

7. *Id.* at p. 1242.

8. Second amended complaint ¶ 18–21.

9. Second amended complaint ¶ 22–28.

10. Second amended complaint ¶ 29–30.

having severe pain in his back and left leg, that he could confirm that information with the nurses in the health unit, that he was taking medication for the back pain and that had taken a laxative during the night which was beginning to take effect. He told Adair that he urgently needed to go to the bathroom. Adair then called someone and proceeded to laugh and joke about how the plaintiff had been given a laxative but was stuck on the hitching post and unable to go to the bathroom. Adair left without doing anything and Lt. Robinson appeared. Fountain also asked Robinson to be allowed to go to the bathroom and Robinson did nothing. Later that morning, Warden White came out to the back gate to assist a deputy sheriff who was there to pick up an inmate and walked past Fountain. Fountain shouted to White that his back was hurting, that he had taken a laxative and that he desperately needed to use the restroom. White ignored his request and said, "I don't have time to talk to you".[11]

Around noon, Fountain was finally forced to defecate in his pants. After defecating in his pants, he told Officer Fuller, an officer at the back gate, what had happened. Fuller responded "I didn't put you there; my lieutenant did." Fuller then radioed Lt. Smith to ask him if he could release Fountain. Smith told Fuller that he could release Fountain only if he agreed to return to work and could walk fast enough to keep up with the rest of the squad. Fuller talked with Fountain and Fountain explained his medical problem and that he could not keep up with the squad. Fuller communicated this information to Smith who said, "Let his smart ass just stay like he is then." Fuller then did nothing to remove the plaintiff from the hitching post or to allow him to clean himself up or to use the rest room.[12] Late that afternoon, three bus loads of inmates returned to the prison, saw and smelled Fountain's soiled pants, and made fun of him.[13]

An officer from the next shift saw the condition Fountain was in, called Smith who was still on duty and asked for permission to release him. Smith indicated that he would be there to release the plaintiff but never appeared. Eventually, another lieutenant released Fountain from the hitching post. At the time of his release, Fountain had been on the hitching post for a total of nine hours in 90 degree heat in a position which caused him pain from a previous back problem. He had defecated on himself and been deprived of food and water.[14]

## III. DISCUSSION

### A. THE PLEADING REQUIREMENTS

The defendants have filed their motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In deciding the motion, the court must accept all allegations of the complaint as true and must construe the facts in a light most favorable to the plaintiff. *Stephens v. Department of Health and Human Serv.*, 901 F.2d 1571, 1573 (11th Cir.1990). Also, however, since plaintiff proceeds under 42 U.S.C. § 1983, the more liberal pleading requirement in Rule 8 does not apply. As the Eleventh Circuit has noted,

... while *Fed.R.Civ.P.* 8 allows a plaintiff considerable leeway in framing [his] complaint, this circuit, along with others, has tightened the application of Rule 8, with respect to § 1983 cases in an effort to weed out non-meritorious claims, requiring that a § 1983 plaintiff allege with some specificity the facts which make out its claim.

*GJR Investments Inc. v. County of Escambia, Florida*, 132 F.3d 1359, 1367 (11th Cir.1998) (*citations omitted*). Consequently, this court, in resolving a motion to

---

11. Second amended complaint ¶ 40.

12. Second amended complaint ¶ 46.

13. Second Amended Complaint par. 47

14. Second amended complaint ¶ 48–52.

dismiss on qualified immunity grounds, is guided by both the regular 12(b)(6) standard and the heightened pleading requirement. *Id.*

## B. THE CONSTITUTIONAL CLAIM ANALYSIS

As the decision of the United States Supreme Court in *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), counsels, when resolving an assertion of the qualified immunity defense, the first question that must be decided is whether the plaintiff, indeed, has stated a violation of a constitutional right in his complaint. Fountain alleges that he was placed on the hitching post when prison officials knew that he had leg pain and a back injury which would be aggravated by the placement, that he was placed on the lower hitching post bar solely to inflict pain, that he was kept on the hitching post even though placement on the hitching post was causing him severe pain, that he was not allowed to go to the bathroom and that he was kept on the hitching post for nine hours in 90 degree temperatures without food and water.

The Eighth Amendment to the Constitution of the United States prohibits "punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' ... or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102–03, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (citations omitted). Where, as here, the allegations of an Eighth Amendment violation come from activities of prison officials in the administration of the prison system, an evaluation of an inmate's claim requires analysis of both an objective component (Was the deprivation sufficiently serious?) and a subjective component (Did the officials act with a sufficiently culpable state of mind?). *Wilson v. Seiter*, 501 U.S. 294, 298–300, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

There are two standards to be used in determining whether prison officials have acted with a sufficiently culpable state of mind. Where an inmate's challenge is to the conditions of his confinement, the court must decide whether prison officials were "deliberately indifferent" to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Where an inmate's challenge is to the actions of prison officials during a prison disturbance or disruption where there is little time for deliberation on the part of the prison officials, the court must decide "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).

According to the allegations of Fountain's complaint, no immediate security risk or potentially volatile situation existed when he was placed on the hitching post. He simply was unable to keep up with his work squad which had not yet left the area of the prison. Accordingly, the court concludes that the *Farmer* deliberative indifference standard applies. *See also, Austin v. Hopper*, 15 F.Supp.2d 1210, 1251–52 (M.D.Ala.1998). The court now turns to the constitutional analysis.

The Objective Component: Was the deprivation "sufficiently serious?"[15] Fountain alleges in his complaint that he was placed on the hitching post in a manner which caused him physical pain for nine hours in extremely hot conditions. He also alleges that he was denied food and water and that he defecated on himself and was forced to remain on the hitching post in his soiled clothes for a significant period of time. The court has little trouble concluding that Fountain has adequately pled sufficient facts to establish that the conditions attendant to his placement on the

**15.** To be sufficiently serious, a deprivation need not rise to the level of serious injury as that term is used in claims involving the use

of excessive force. *See Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

hitching post were sufficiently serious to violate the Eighth Amendment.

Any logical discussion of whether the conditions of Fountain's confinement on the hitching post constitutes the wanton infliction of pain and violates the evolving standards of decency that mark the progress of a maturing society must begin with a discussion of some of the landmark cases from this circuit proscribing unconstitutional conditions in state prisons. In one of the first of many such decisions, this circuit, then sitting as the United States Court of Appeals for the Fifth Circuit, in a decision reviewing remedial orders relating to the Texas prison system, noted that the deprivation of the basic elements of hygiene was a violation of the Eighth Amendment. *Novak v. Beto*, 453 F.2d 661, 665 (5th Cir.1971). Later in *Gates v. Collier*, 501 F.2d 1291 (5th Cir.1974), the Fifth Circuit noted that the forms of corporal punishment such as handcuffing inmates to the fence and cells for long periods of time and forcing inmates to lie on crates, stumps or otherwise maintain awkward positions for prolonged periods "run afoul of the Eighth Amendment, offends contemporary concepts of decency, human dignity and precepts of civilization which we profess to possess". *Id.* at 1306. Lastly, the court, in reviewing the orders of Judge Frank M. Johnson, Jr. concerning the Alabama prison system, concluded that a state, under the Eighth Amendment, has a duty to furnish its prisoners with reasonably adequate food, clothing, shelter, sanitation and personal safety. *Newman v. State of Alabama*, 559 F.2d 283, 291 (5th Cir.1977). The Supreme Court then in *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), echoed these early decisions of the Fifth Circuit when it held that the Constitution is violated when prison officials fail to provide minimal civilized measure of life's necessities "to an inmate in their custody."

Plainly, under the allegations of this complaint, Fountain was subjected to corporal punishment which involved the unnecessary infliction of pain and the deprivation of basic necessities. He was confined on a hitching post for nine hours without food and water in excessive heat in a position which aggravated a preexisting back injury. He was not allowed to go to the bathroom even though he had taken a laxative and eventually defecated on himself. He was not removed from the hitching post to clean himself up until several hours later.[16] Courts on similar facts have concluded that the objective component of the Eighth Amendment was violated. *See Palmer v. Johnson*, 193 F.3d 346 (5th Cir.1999) (inmate's constitutional rights were violated when he was forced to spend night on work field along with other members of a work squad without adequate bathroom facilities and shelter); *Chandler v. Baird*, 926 F.2d 1057, 1065–66 (11th Cir.1991) (exposure of a inmate to extreme temperatures and the denial of hygiene items may constitute an Eighth Amendment violation); *Austin v. Hopper*, 15 F.Supp.2d 1210 (M.D.Ala. 1998) (placement on a hitching post in excessive heat without food, water and access to a bathroom in such a position as to cause pain constitutes cruel and unusual punishment); *Knop v. Johnson*, 655 F.Supp. 871 (W.D.Mich.1987) (inmates' constitutional rights were violated when they were forced to defecate or urinate in their cells and then dump the urine and feces into a courtyard).

The Department of Corrections itself recognizes the potential harm that the hitching post can cause and implicitly concedes that the Constitution requires that an inmate with a physical problem not be placed on the hitching post and that inmates on the hitching post be given water and access to a restroom. As previously

---

**16.** The court may consider the cumulative effect of adverse conditions of confinement when such conditions have a "mutually enforcing effect that produces the deprivation of a single identifiable human need such as food, warmth or exercise." *Wilson v. Seiter*, 501 U.S. at 304, 111 S.Ct. 2321.

noted, the departmental regulation governing the use of the hitching post requires that the health care unit be contacted before an inmate is placed on the hitching post and also requires that an inmate placed on the hitching post be given the opportunity to use the bathroom once every hour. According to the facts as pled by Fountain and the inferences arising from those facts, these important safeguards were not followed in his case. Fountain was subjected to unconstitutional conditions while on the hitching post.

### (1) The Subjective Component—Deliberate Indifference

■ The term "deliberate indifference" was first coined by the Supreme Court in its opinion in *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The term was further clarified by the court's opinion in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In *Farmer,* the Court held that

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must be both aware of facts from which an inference could be drawn that a substantial risk of harm could be drawn and he must also draw the inference.

*Id.* at 837, 114 S.Ct. 1970. However, it is knowledge of the risk of harm that is important.

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that a harm would actually befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.

*Id.* at 842, 114 S.Ct. 1970. Further,

> [w]hether a prison official had the requisite knowledge is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substan-

tial risk from the very fact the risk was obvious.

Prison officials are not liable if "they prove they were unaware of even an obvious risk" or if "they responded reasonably to a known risk even if the harm ultimately was not averted." *Id.* at 844, 114 S.Ct. 1970.

The defendants seek dismissal of the complaint on qualified immunity grounds and on the ground that the complaint fails to state a claim. As previously noted, at this stage of the proceedings, the qualified immunity and the Rule 12(b)(6) inquiries are intertwined. A court must examine a complaint with regard to each individual defendant to determine whether a constitutional claim is stated against that defendant and to determine whether that defendant is qualifiedly immune. *GJR Investments Inc. v. County of Escambia, Florida,* 132 F.3d at 1366.

The qualified immunity analysis proceeds as follows: First, the defendant government official must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful act occurred. Then the burden shifts to the plaintiff to demonstrate that the defendant violated clearly established constitutional law. *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983). *See also, Hartsfield v. Lemacks,* 50 F.3d 950 (11th Cir.1995). In this case, there is no question that the defendants were acting within the scope of their discretionary authority. The relevant question thus becomes whether the defendants violated clearly established law.

■ To overcome the defense of qualified immunity, the plaintiff has the burden of pointing to case law which "pre-date[s] the official's alleged improper conduct, involve[s] materially similar facts and 'truly compels' the conclusion that the plaintiff had a right under federal law." *Ensley v. Soper,* 142 F.3d 1402, 1406 (11th Cir.1998) (*citing Lassiter,* 28 F.3d at 1150). For the right to be clearly established, there need not be an identical prior case; rather what is necessary is a prior case that is materi-

ally similar. *Lassiter v. Alabama A & M,* 28 F.3d at 1150. Qualified immunity is a guarantee of fair warning. *McElligott v. Foley,* 182 F.3d 1248, 1257 (11th Cir. 1999).[17]

■ This case, however, involves a subjective state of mind. As noted above, in order to state a constitutional claim, the plaintiff must plead sufficient facts to establish "deliberate indifference." Where a plaintiff successfully pleads facts to establish deliberate indifference, a defendant is stripped of his or her qualified immunity. *McElligott v. Foley,* 182 F.3d at 1257. As the court in *McElligott* noted concerning the finding of deliberate indifference:

> In *Greason v. Kemp,* [891 F.2d 829 (11th Cir.1990)] we said that "one simply cannot argue that a prisoner has a clearly established right to adequate psychiatric care but that that right is not violated by a particular treatment amounting to grossly inadequate care unless some prior court has expressly so held on 'materially similar' facts. Such an approach would an unwarranted degree of rigidity to the law of qualified immunity."

*Id.* at 1260; *See also Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1186 (11th Cir.1994) ("A finding of deliberate indifference necessarily precludes a finding of qualified immunity; prison officials who deliberately ignore the serious medical needs of inmates cannot claim that it was not apparent to a reasonable person that such actions violated the law.") (*quoting Hamilton v. Endell,* 981 F.2d 1062, 1066 (9th Cir.1992) (emphasis in original)).

The present case law of the Eleventh Circuit discusses the relationship between deliberate indifference and qualified immunity only in cases involving medical or psychiatric care. However, the court has made it clear in other contexts that state of mind is generally relevant to the qualified immunity issue. *See Walker v. Schwalbe,* 112 F.3d 1127, 1132–33 (11th

Cir.1997). It would make no sense to say that a prison official who denied an inmate medical treatment for a serious medical problem would not be qualifiedly immune but that a prison official who imposed a punishment on an inmate which created a substantial risk that the inmate's mental or physical health would be adversely impacted would be qualifiedly immune because no court had specifically outlawed that type of punishment. Making an analogy more similar to this case, it would make no sense to say that a prison official who denied an inmate access to treatment for a serious and painful back injury would not be qualifiedly immune while a prison official who placed an inmate on a hitching post when he knew that the hitching post would cause the inmate pain because of his serious back problem would be.

The court will now examine the allegations made by Fountain against each individual defendant to determine whether Fountain has pled sufficient facts which, if taken as true, would establish deliberate indifference. If he has, then the motion to dismiss with regard to that defendant is due to be denied. The defendants have chosen to raise the qualified immunity issue at the motion to dismiss stage. Consequently, as the court has previously noted, it is obliged to accept the facts pled as true.

### C. INDIVIDUAL LIABILITY

#### (1) *Former Commissioners Hopper and Herring*

■ Fountain pleads no facts to establish deliberate indifference on the part of former Commissioners Hopper and Herring. Fountain does not allege, and quite candidly could not, that either Hopper or Herring knew that he had been placed on the hitching post. The only way that these defendants could arguably be liable is if the mere use of a hitching post to punish an inmate regardless of the conditions at-

---

**17.** The law can be "clearly established" for qualified immunity purposes only by decisions of the United States Supreme Court, the Eleventh Circuit Court of Appeals or the highest

court of the state where the case arose. *Santamorena v. Georgia Military College,* 147 F.3d 1337, 1342 n. 4 (11th Cir.1998).

tendant to his placement on the post was a violation of clearly established law. That is clearly not the case. No court has ever held that the use of the hitching post regardless of the conditions violates the Constitution. Even Judge Thompson in his carefully crafted opinion in *Austin* did not do that. Indeed, Judge Thompson was careful to note that his declaration that the hitching post was unconstitutional was a declaration that "the manner in which defendant Commissioner has used the hitching post violates the Eighth Amendment to the United States Constitution." *Austin v. Hopper,* 15 F.Supp.2d at 1274. Judge Thompson did not hold that the use of the hitching post, in and of itself, was a constitutional violation. Even more importantly, there is no case which provided fair warning to any Commissioner of Corrections that the use of the hitching post, regardless of the conditions, was a constitutional violation. The plaintiff suggests that the decision of the Fifth Circuit in *Gates v. Collier* clearly establishes the law. As the court has previously noted, the *Gates* decision holds that corporal punishment which requires inmates to maintain awkward positions for prolonged periods of time is a constitutional violation. It is clear from *Gates,* however, that it is the conditions of corporal punishment which matters. There is no blanket prohibition against the use of punishment such as the hitching post in *Gates* which would signal to the Commissioner of Corrections that the mere use of the hitching post would be a constitutional violation.

More importantly, the decisions of the Eleventh Circuit in *Williams v. Burton,* 943 F.2d 1572 (11th Cir.1991), and *Ort v. White,* 813 F.2d 318 (11th Cir.1987), provided support for the Commissioner's activities. Both of those cases authorized a form of punishment which could be considered extreme so long as the plaintiff is provided necessities such as food and the opportunity to use the bathroom. As these cases suggest, the constitutional vice in the use of the hitching post is the failure

of individual officers to insure well being of the individual inmate rather than the unconstitutional nature of the punishment itself.

As Judge Thompson noted in his opinion in *Austin,* the punishments in both *Williams* and *Ort* were authorized as a response to a potentially dangerous situation and, thus, were measured under the standard of *Whitley v. Albers. Austin v. Hopper,* 15 F.Supp.2d at 1251–52. In both decisions, however, the court permitted the punishment to continue after the immediate threat had ceased so long as adequate food and water were provided and there was an opportunity for the inmate to use the bathroom. Thus, a reasonable correctional official could well have believed that the hitching post could be used as a punishment so long as there were adequate steps taken to insure the health and safety of the inmate. There simply is no "bright line" law that indicates that the use of the hitching post under conditions that assure the safety and well being of the inmate is unconstitutional. Fountain has failed to make any specific allegations against Hopper or Herring. The fact that they authorized the use of the hitching post, without more, does not make them liable to Fountain in damages. The motion to dismiss as to Hopper and Herring is due to be granted.

### (2) Former Warden J.D. White

Former Warden J.D. White is mentioned in three places in Fountain's complaint. Fountain alleges that Smith told Fountain that White had given a direct order that he be placed on the hitching post[18] and that at the time of the direct order, "upon information and belief, Defendant White either knew about the plaintiff's medical condition, or refused to give the plaintiff an opportunity to be heard as to his side of the story before ordering Defendant Lt. Smith to honor Defendant Talley's request to put Plaintiff on the hitching post."[19] Fountain also alleges

---

**18.** Second amended complaint ¶ 27.

**19.** Second amended complaint ¶ 28.

that he told White that he had taken a laxative and that he needed to use the restroom and that White ignored his requests.[20]

As noted in the discussion concerning Hopper and Hearing, there is no liability which attaches to a correctional official who simply orders an inmate placed on the hitching post if the safety and well-being of the inmate is assured. The problem which was identified by Judge Thompson in *Austin* is that the hitching post is being used in an unconstitutional fashion by denying inmates basic needs and by causing them physical pain. Thus, White is qualifiedly immune from this suit for damages insofar as it seeks to make him liable simply because he ordered that Fountain be placed on this hitching post. The court will now decide whether the plaintiff has adequately pled a claim of deliberate indifference against Warden White.

■ The first problem for the plaintiff is that the allegation concerning White's knowledge of the plaintiff's condition is based on "information and belief." Generally, pleading on "information and belief" is appropriate. *Perington Wholesale v. Burger King Corp.*, 631 F.2d 1369 1372 (10th Cir.1979). That general rule, however, is modified where more specific pleading requirements are imposed. In that situation, pleading upon information and belief is permissible so long as the allegations are accompanied by a statement of facts upon which the belief is founded. *Antilles Trading Company S.A. v. Scientific–Atlanta, Inc.*, 117 F.R.D. 447, 451 (N.D.Ga.1986). As previously noted, the law of this circuit imposes a particularized pleading requirement on suits for damages against public officials or employees in their individual capacity. *See GJR Investments Inc. v. County of Escambia*, 132 F.3d at 1366. The constitutional violations flow from the conditions under which Fountain was maintained while on the hitching post. In order to maintain this action against White, Fountain must allege

sufficient facts to establish that White knew that Fountain faced a substantial risk of serious harm if he were placed on the hitching post and was "deliberately indifferent to that risk." If Fountain pleads facts which established that White ordered Fountain placed on the hitching post knowing that he had a back injury which would be aggravated by the placement, Fountain would have succeeded in overcoming White's qualified immunity defense. Fountain attempts such pleading but the critical allegation of knowledge on White's part is based only on information and belief and contains no allegations of fact to show the basis for the belief. That allegation is insufficient to destroy White's qualified immunity because of the particularized pleading requirement imposed in cases such as this. Fountain has failed to plead deliberate indifference against White.

■ Thus, the sole specific allegation against former Warden White is that he did not respond to Fountain's request to go to the bathroom. As the court has noted, infra, there are certain circumstances where the refusal of access to a bathroom coupled with other circumstances gives rise to an a serious deprivation. None of those cases suggest, however, that the refusal of a single request by a warden engaged in other business is "deliberate indifference" to a known risk of harm. The court, thus, concludes that the allegations of deliberate indifference against former Warden White are insufficient to strip him of his qualified immunity. White is due to be dismissed.

### (3) Lt. Jesse Smith

■ Smith personally shackled Fountain to the hitching post after Fountain had specifically told Smith about his medical problems and Smith had seen that he had difficulty walking.[21] Smith also deliberately chose a lower hitching post because it would be more painful to Fountain.

---

**20.** Second amended complaint ¶ 40.

**21.** Second amended complaint ¶¶ 24–26.

Smith then refused to release Fountain from the hitching post on two occasions even after Fountain had defecated in his pants.[22] Smith told Correctional Officer Fuller to "Let his smart ass stay just like he is then." The regulation concerning the use of the hitching post required that the health care unit be contacted before an inmate was placed on the hitching post and that inmates be given the opportunity to go to the bathroom once each hour. Smith violated this regulation. The facts as pled by Fountain, establish that Smith knew that there was a significant risk of serious harm to Fountain because of his back injury, his lack of access to a restroom and the deprivation of water and that Smith knowingly disregarded that risk. The motion to dismiss, insofar as it applies to him, is due to be denied.

### (4) Lt. Robinson

 Lt. Robinson was on duty and saw Fountain on the hitching post. Fountain told him that his lower back was hurting, that he had taken a laxative and needed to use the bathroom. Another inmate who was present also pleaded with Robinson to allow Fountain to use the bathroom.[23] Robinson did nothing to assist Fountain and went through the back gate into a small building. He left the small building and again saw Fountain. Fountain again asked Robinson to be allowed to use the bathroom and Robinson again ignored his plea.[24] As with Smith, the facts as pled by Fountain about his treatment establish that Robinson knew that there was a significant risk of serious harm to him and that Robinson knowingly disregarded that risk. The motion to dismiss, insofar as it applies to Robinson, is due to be denied.

### (5) Sergeant Adair

At approximately 9:45 A.M., Sergeant Adair came to the back gate of the prison which is in close proximity to the hitching post. He saw Fountain bent over the lower rail of the hitching post and writhing in pain. Fountain told Adair that he had a bad back and was having severe pain in his back and left leg, that he could confirm that information with the nurses in the health unit, that he had taken a laxative which was beginning to work and that he urgently needed to go to the bathroom.[25] Adair smiled at Fountain and made a phone call.[26] Adair then left the back gate area without providing any relief to Fountain. The facts, as pled by Fountain, about his treatment establish that Adair knew of a significant risk of serious harm to Fountain and knowingly disregarded that risk. The motion to dismiss, insofar as it applies to him, is due to be denied.

### (6) Correctional Officer Talley

 Talley was the farm squad officer who supervised the farm squad to which Fountain was assigned. Talley saw that Fountain was unable to keep up with his squad. Fountain explained his medical problems to Talley, including the fact that he had severe pain in his lower back which was causing severe leg pains making it very difficult to walk. He also told Talley that he had been up all night at sick call until 4:30 that morning and that he had been given a laxative by prison medical staff.[27] Despite these warnings about Fountain's physical problems, Talley asked that Fountain be placed on the hitching post. The facts, as pled by Fountain about his treatment, establish Talley knew that Fountain faced a significant risk of serious harm if he were placed on the hitching post and knowingly disregarded that risk.

22. Second amended complaint ¶¶ 43–45.

23. Second amended complaint ¶ 36.

24. Second amended complaint ¶¶ 37–38.

25. Second amended complaint ¶¶ 31–32.

26. Fountain alleges that the phone call was made to Lieutenant Robinson but provides no facts to support that belief.

27. Second amended complaint ¶¶ 20–21.

The motion to dismiss, as it concerns Talley, is due to be denied.

### (7) Correctional Officer Fuller

After not being allowed to use the bathroom, Fountain was forced to defecate in his pants. Fountain told Fuller, an officer at the back gate, what had happened and Fuller responded, "I didn't put you there; my lieutenant did." Fuller then radioed Lieutenant Smith and asked if he could release Fountain and was told that he could release him only if he could return to his farm squad. Fountain explained to Fuller why he could not return to the farm squad. Fuller relayed the information to Smith and Smith refused to allow Fuller to release him. Fuller did not ignore Fountain's condition, but rather called Smith to see if Fountain could be released. Smith refused his request. Fuller cannot be said to have been deliberately indifferent if he responded "reasonably" to Fountain's request. *Farmer v. Brennan*, 511 U.S. at 844, 114 S.Ct. 1970. The facts as pled show that Fuller made no attempt to release Fountain other than to radio Smith. At the summary judgment stage, the court will have more facts on which to assess the reasonableness of Fuller's actions. On the facts, as pled, however, Fuller knew that Fountain had defecated on himself and did not release him to allow himself to clean up. Thus, he knew that Fountain faced a significant risk of serious harm because he was forced to remain on the hitching post covered in his own feces and knowingly disregarded that risk. The motion to dismiss, at it applies to Fuller, is due to be denied.

### IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the motion to dismiss filed by the defendants on October 30, 1999 be GRANTED as to defendants Hopper, Herring, and White and DENIED as to defendants Smith, Robinson, Adair, Talley and Fuller.